**NOVO INDUSTRIES, L.P. Plaintiff,**

v.

**MICRO MOLDS CORPORATION and Oscar Helver Defendant.**

**No. 99–6465–CIV–HUCK, 99–6465–CIV–GARBER.**

United States District Court, S.D. Florida.

Dec. 23, 2002.

Michael C. Cesarano, Lawrence D. Silverman, and James G. Sammataro, Akerman, Senterfitt, P.A., Miami, FL, for defendants.

James H. Riley II, of Shook, Hardy & Bacon, LLP, Houston, TX, Sergio E. Pagilery, Shook, Hardy & Bacon, LLP, Miami, FL, for plaintiff.

## ORDER ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW/NEW TRIAL, PLAINTIFF'S MOTION FOR ENHANCED DAMAGES AND ATTORNEY'S FEES, PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AND PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

HUCK, District Judge.

THIS CAUSE is before the Court on the Defendant Micro Molds Corporation's ("Micro Molds") Motion for Judgment as a Matter of Law/New Trial [DE # 210], Plaintiff Novo Industries, L.P.'s ("Novo") Motion for Enhanced Damages and Attorney's Fees [DE # 186], Novo's Motion for Permanent Injunction [DE # 190], and Novo's Motion to Re–Open Case to Enter Judgment [DE # 197]. The Court has carefully considered the above enumerated motions, the parties' respective legal memoranda and oral argument with respect to the motions, together with the pertinent portions of the record.

The above enumerated post-trial motions were filed after a jury trial on Novo's patent infringement claim against Mirco Molds. On November 1, 2001, after a four-day trial, the jury, by its verdict, found that Micro Molds had literally infringed Novo's United States Patent No.

5,056,578 ("the '578 patent"), that Micro Molds had not proved any of its defenses, and awarded Novo $649,000.00 as its lost profits. The jury also found that Micro Molds was guilty of willful infringement.

On November 8, 2001, Novo filed its motion for entry of judgment, enhanced damages based on the jury's finding of willful infringement and for attorney's fees pursuant to 35 U.S.C. § 285 and for permanent injunction. On December 27, 2001, before the Court could rule on Novo's motions, Micro Molds filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Micro Molds' petition resulted in a stay of these proceedings. On February 26, 2002, the bankruptcy court entered an Agreed Order Granting Novo's Motion for Relief From Stay. That order lifted the stay so that this Court could proceed with post-trial motions. Thereafter, on May 22, 2002, Micro Molds filed its Motion for Judgment as a Matter of Law/New Trial.

## A. Micro Molds' Motion for Judgment as a Matter of Law/New Trial

In its Motion for Judgment as a Matter of Law, Micro Molds contends, among other things, that the jury's verdict should be set aside and judgment entered in favor of Micro Molds because of the Court's erroneous *Markman* claims construction [1] and because there was insufficient evidence for the jury to reasonably find that Novo's '578 patent was valid or that it was infringed upon by Micro Molds. These infringement liability issues, after being briefed by the parties, were extensively argued at a hearing held on July 11, 2002. At the conclusion of that hearing, the Court, in rejecting Micro Molds' contentions with respect to the infringement liability issue, announced in open court its findings of fact and conclusions of law.

The Court reaffirms, adopts and incorporates those findings and conclusions in this order as if they were fully set forth herein. Accordingly, Micro Mold's Motion for Judgment as a Matter of Law/New Trial [DE # 210] will be DENIED.

## B. Measure of Damages

At the July 11, 2002 hearing, Micro Molds also argued that the Court must vacate the jury's lost profits award because there was insufficient, competent evidence to sustain it. Micro Molds challenged the lost profit award on the basis that Novo failed to meet its evidentiary burden for lost profits. In particular, Micro Molds contends that Novo failed to satisfy the "but for" requirement for recovery of lost profits in patent infringement cases. At the conclusion of the hearing, the Court allowed the parties to submit additional briefing on the damages issues. After the parties completed this additional briefing, the Court heard additional oral argument on September 20, 2002. Having considered all of the parties' additional legal memoranda and legal argument, the Court agrees that the jury's lost profits award must be vacated because Novo failed to satisfy its burden of presenting sufficient competent evidence for the jury to find that "but for" Micro Molds' infringement of Novo's '578 patent, Novo suffered reasonably ascertainable lost profits.

### 1. Lost Profits

The parties generally agree on the law applicable to damages in a patent case. The object in patent cases, as with most other commercial cases, is to place the injured party in the same, or as near as may be, situation as it would have been in had the infringement not occurred. *See Fromson v. Western Litho Plate & Supply*

---

1. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977–79 (Fed.Cir.1995) (holding that the Court, not the jury, is to determine what the words in the claims mean).

*Co.*, 853 F.2d 1568, 1574 (Fed.Cir.1988). Recovery of lost profits is one of the methods to accomplish this objective. In order to recover damages in the form of lost profits, the patent owner must establish in the evidence a causal relation between the infringement and its lost profits. *See BIC Leisure Prod., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214, 1218 (Fed.Cir.1993). Stated another way, the patent owner must prove that "but for" the defendant's infringement, the patent owner would have made the sales which the defendant made. *See Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 247 F.3d 1341, 1353 (Fed. Cir.2001). However, courts recognize that the quantifying of damages, i.e., lost profits in a patent case, is not an exact science and that it is often possible only to establish the "best approximate amount to which the patent owner is entitled" based on "reasonable probability." *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863 (Fed.Cir.1985).

In recognition of the difficulty in proving lost profits in patent cases, federal courts have formulated and apply a four-factor test first articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir.1978) ("the Panduit test"). The Panduit test has become the prevalent, though not exclusive, standard for determining lost profits in patent cases. *Cent. Soya Co., Inc. v. George A. Hormel & Co.*, 723 F.2d 1573, 1578–79 (Fed.Cir.1983); *BIC*, 1 F.3d at 1218. The Panduit test is one by which Novo sought to prove, and now seeks to sustain, its lost profit damages.

In order to provide lost profits under the Panduit test, Novo must prove, with reasonable probability, (1) a demand for the patented product during the period in question; (2) an absence of acceptable non-infringing substitutes; (3) its own manufacturing and marketing capacity to meet or exploit that demand; and (4) a detailed computation of the amount of the profit it would have made. *Panduit*, 575 F.2d at 1155.

■ The Court need not discuss here *Panduit* factors (1), (3) and (4) because the record clearly establishes that Novo successfully proved these at trial. Moreover, Micro Molds does not strenuously argue to the contrary. However, Micro Molds does argue that Novo failed with respect to the second factor—the absence of acceptable non-infringing substitutes. In this regard, both parties rely principally on the testimony of Novo's executive vice president, Todd Markey. Novo claims that Markey's testimony establishes the absence of any acceptable non-infringing substitute, relying on his testimony at page 62 of the transcript before the Court. However, as Micro Molds points out, rather than eliminating the existence of any substitute products, Markey's testimony establishes that such substitute products existed by virtue of a Novo licensee.[2] That licensee was Scientific Plastics. Moreover, in its Brief Supporting Lost Profits, at page 4,

---

2. Markey testified as follows:

Q. And during this time were you aware of any other carrier assembly that had the self-aligning feature on a rack and pinion system that was available?

A. Other than people licensed, no.

Q. What other self-aligning carriers are there on the market that don't infringe a product?

A. In what respect?

Q. Rack gear, carriers that are available that do not infringe the Helver patent?

A. I believe there are some out there that don't have the self-aligning feature that are rack and pinion.

Q. What about the ones that do have the self-aligning feature, are you aware of any?

A. Scientific, Micro Molds.

Q. What about a company called Arabel? Have you ever heard of Arabel?

A. Yes.

Q. Do you know what Arabel sells by way of a rack style carrier?

Novo asserts that "Todd Markey further testified that only [Novo's licensee] Scientific Plastics and Micro Molds made carriers with suitable self-aligning features." [3] In view of Markey's testimony, which is virtually the only testimony related to the existence or nonexistence of acceptable non-infringing carriers, and in view of the Federal Circuit's teachings that a product licensed by the patent holder to a third-party seller as a result of litigation is an acceptable non-infringing substitute, the Court concludes that Novo failed to establish the absence of acceptable, non-infringing substitute. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222–23 (Fed.Cir.1995). The facts and issues in *Pall* which are pertinent to the present inquiry are quite similar. In *Pall:*

> The district court, applying [the *Panduit*] guideline, held that the Cuno membranes were "acceptable non-infringing substitutes" for the Pall membranes. Pall states that this is incorrect, that the Cuno membranes were the subject of ongoing infringement litigation until May 1990, when they were licensed [to Cuno]. The district court should have recognized the distinction between the legal and market situation before and after the licensing of the Cuno products. During the period before the Cuno products were licensed their presence in the marketplace did

not defeat Pall's entitlement to lost profits damages for all of MSI's infringing sales, for the Cuno products were not "infringing substitutes."

> It was not necessary for Pall to continue the Cuno litigation to judicial decision of the issue of infringement, as MSI argues. The voluntary settlement of litigation does not retrospectively transform an accused infringing product into a "noninfringing substitute."

*Id.*

Here, Novo sued Scientific Plastics, for infringing its '578 patent. As a part of the settlement, Novo granted a license to Scientific Plastics. Pursuant to that license, Scientific Plastics continued to manufacture its then non-infringing carriers during the period for which Novo now seeks lost profits based on Micro Molds' sales of its product. Novo argues that its lost profit award may be sustained, at least in part, because any carrier sales by Scientific Plastics prior to obtaining a license would constitute infringing sales.[4] While Novo's argument is legally correct, it is not supported by competent evidence. This is because, while Markey established that Scientific Plastics had a license during the relevant period, Novo failed to present evidence by which the jury could have determined when Scientific Plastics sales infringed Novo's patents and when they did not.[5] Given that the undisputed evidence

---

A. I have some understanding what they are selling.

Q. It doesn't infringe you patent, does it?

A. I don't know at this time. I can't comment.

Q. Has anyone told you it does? .

A. I can't say comment on that. I'm not sure.

(Transcript of Trial Testimony, Oct. 30, 2001, at 62.)

3. It is the self-aligning feature in the form of a rack and pinion gear as represented in '578 patent, that makes the product an acceptable substitute. ·

4. Novo contends that the jury may reasonably conclude that Scientific Plastics' license existed at least by May 10, 2001. That is the date of Novo's Exhibit 26 the Consent Decree by which Novo and Scientific Plastics settled their patent infringement litigation. However, the Consent Decree does not reveal when Scientific Plastics obtained its licensee.

5. Moreover, Novo's argument does not take into consideration Markey's testimony wherein he indicates that there were more than one licensed sellers of carriers which were acceptable substitutes for Novo's carrier.

establishes that there was at least one acceptable non-infringing product competing with Novo for sales during the period in question, Novo did not carry its burden of proof as to the second Panduit factor. In view of this, there was insufficient evidence, under the Panduit test, to support the lost profits damages.

As noted above, the Panduit test is not the exclusive test for establishing "but for" causation of a patent holder's lost profits. In fact, it is best applied in those cases where the patent holder's "lost profits damage theory rests on the existence of a two-supplier market with facts (assuming evidence of capacity) which would support an inference that [patent holder] would have made the sales of [the infringing product if the infringer] had not sold its infringing product." *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1164 (Fed.Cir.1991).

In an apparent recognition that it may not have established the existence of a two-supplier market for its carriers, as an evidentiary basis to prove the second factor of the Panduit test, Novo argues that it has proven its lost profits by means of an acceptable alternative approach, establishing the patent owner's market share. To prevail under this market share approach, Novo must have presented credible evidence establishing a reasonable probability that it, rather than non-infringing competitors, would have made the sales Micro Molds made by infringing, based on an analysis of the respective market shares of non-infringing acceptable substitute. Thus, under the market share approach, Novo was required to prove its market share and that Novo, rather than its non-infringing competitor, would have captured Micro Molds' infringing sales. *See State Indus. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed.Cir.1989), *Bose Corp. v. JBL, Inc.*, 112 F.Supp.2d 138, 160 (D.Mass.2000). To prove its market share,

Novo was required to present "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. Am. Maize–Prod., Co.*, 185 F.3d 1341, 1351 (Fed.Cir.1999).

The Court has reviewed the evidence and finds no such proof and economic market share analysis. Novo has presented evidence establishing that it is the largest manufacturer in the blind carriers market, that Novo and its parent company, had total annual sales (apparently of all products) in excess of $1.5 billion in 2000, that Novo was fifty times larger than Micro Molds, and that Scientific Plastics is a relatively small competitor in the vertical blind business, as compared to Novo. From this evidence, Novo argues that it is reasonable to assume that Novo, not Scientific Plastics, would have made most, if not all, of Micro Molds' sales. While it may be fair to assume that Novo would have made many of those sales, there is not sufficient evidence on the record to prove or quantify what sales Novo would have made.

For the reasons discussed above, the Court finds that Novo had not presented sufficient, competent evidence to support the jury award of lost profits damages and it must be set aside.

## 2. Reasonable Royalties

■ However, the Court's inquiry into Novo's damages does not end with the setting aside of the lost profits award. There is another method by which the Court may quantify Novo's recoverable damages. 35 U.S.C. § 284 sets a reasonable royalty as the minimum damages to which a patent holder is entitled for infringement. Accordingly, in the absence of lost profits, Novo should be awarded damages equal to a reasonable royalty from Micro Molds. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078

(Fed.Cir.1983). A reasonable royalty is that amount which a person wishing to manufacture a patented product would be willing to pay as a royalty while still making a reasonable profit on the product. *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed.Cir. 1984).

■ The parties agree that when actual damages of lost profits have not been proven, Novo is entitled to a reasonable royalty from Micro Molds. Of course, the parties disagree as to what that royalty should be. Therefore, the Court has reviewed the evidence presented at trial to ascertain what is a reasonable royalty. The best and only competent evidence relating to a reasonable royalty rate is found in Markey's rather sparse trial testimony regarding a license agreement which Novo had with Scientific Plastics. At trial, Novo's Markey testified that Novo had sued Scientific Plastics for infringing on its '578 patent. That lawsuit was settled pursuant to a written settlement agreement. The settlement agreement was not offered into evidence. However, Markey testified about the terms of the settlement agreement. Markey's complete testimony on the terms of the Scientific Plastics settlement agreement is as follows:

By Mr. Riley:

Q. One point that was brought up in cross that we initially talked about yesterday was the license agreement with Scientific Plastics and the settlement of that agreement?

A. Correct.

Q. And I believe that you have an understanding, don't you, of the terms of that settlement agreement?

A. Yes, I do.

Q. And, Mr. Markey, when you settled with Scientific Plastics, what has Scientific Plastics paid to settle the lawsuit and to get a license?

A. There are two aspects: The first was there is a lump sum payment of $675,000.

Q. And what else did they pay?

A. What we agreed to is to license them for the term of the patent. Do you want me to go into the detail of that?

Q. Did you just—do you remember generally what the terms of the license were?

A. I believe it is for the first 2,000 boxes, there is multiple 500 pieces in a box. It was a penny a carrier. Or ten percent of the profit between 2,001 and 3,000 boxes, I believe it's half a cent or seven percent of the profit, and anything over 3,000, I believe it was five percent of the profit or half a penny.

Q. So, in the beginning Scientific Plastics paid Novo a lump sum of $675,000?

A. That's correct.

Mr. Riley: No further questions, Your Honor.

(Transcript of Trial Testimony, Oct. 30, 2001, at 40–41.)

Based on this sparse testimony, Novo argues that the total reasonable royalty due to it from Micro Molds is $716,622.50. Novo calculates this total on the $675,000 lump sum paid by Scientific Plastics in settlement of Novo's patent infringement suit, plus a "running royalty" over Micro Mold's infringement period based on the fixed per carrier license fee paid by Scientific Plastics for carriers produced after the lawsuit was settled. Both Novo and Micro Molds agree that this so-called "running royalty" amounts to $41,622.50.

Micro Molds argues that the only definitive evidence from which a reasonable royalty may be determined is the "running royalty" rate. Micro Molds argues that the

$675,000 lump sum should not be used as an additional basis for a royalty because that amount was paid by Scientific Plastics as a lump sum to settle Novo's then pending infringement lawsuit and Novo did not present any evidence to establish how the $675,000 was calculated. The Court agrees with Micro Molds that a royalty based on the $675,000 lump sum payment would be unduly speculative. Novo did not, in any meaningful way, present competent evidence from which the Court could reasonably determine how much, if any, of the lump sum payment actually represented a royalty payment for past infringement, or for future production, or how such royalty was calculated. For example, there was no testimony establishing how long was the infringing period, how many infringing carriers Scientific Plastics had produced during that period, how much was paid for past damages, such as lost profits, attorney's fees, interest, enhancements or other damages. Moreover, nowhere in Markey's testimony does he definitively state that the lump sum payment represented, or even included, damages based on a royalty rate negotiated between Scientific Plastics.

Based on the evidence presented, the Court finds that a reasonable royalty for the infringing product sold by Micro Mold is $41,622.50. Therefore, the Court finds that the amount of actual damages to which Novo is entitled as a result of Micro Molds' infringement of '578 patent is $41,622.50 plus prejudgment interest.

## C. *Novo's Motion to Enhance Damages and Attorney's Fees*

### 1. **Enhanced Damages**

 Novo asks the Court to enhance its damages pursuant to 35 U.S.C. § 284. Section 284 provides that the district court in a patent infringement case "may increase the damages up to three times the amount found or assessed" by the jury. A finding of willful infringement by the jury authorizes but does not mandate an award of enhanced damages. *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1581 (Fed.Cir.1986). Furthermore, § 284 does not provide any meaningful standard for determining when enhanced damages are appropriate, leaving it to the district court's discretion based on the totality of the circumstances presented in each individual case. *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed.Cir.2001). The Court's paramount consideration is the egregiousness of the defendant's conduct. *Electro Scientific Indus., Inc.*, 247 F.3d at 1353. Enhanced damages may be appropriate where the infringer wantonly ignored the patent owner's rights. *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed.Cir.1992). To assist the district court in determining whether enhanced damages are appropriate, the Federal Circuit has established nine factors which are to be considered: (1) whether the infringer deliberately copied the ideas or designs of the patentee; (2) whether the infringer knew of the other's patent, investigated the scope of the patent, and formed a good-faith belief that the patent was invalid or that it was not infringed; (3) the infringer's behavior as a party during the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's conduct; (7) any remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Id.* at 827. This test is designed to assist the district court in evaluating the infringer's conduct and provides both aggravating and mitigating factors. *See id.* at 826.

 The Court now considered these factors in view of the record before the Court to determine whether, under the

totality of the circumstances, enhanced damages are appropriate here.

*(1) Whether Micro Molds deliberately copied the invention.*

Novo claims that it proved Micro Molds knew of its '578 patent as early as April 16, 1999 when this suit was filed and Micro Molds deliberately copied its Novo invention when it had its older MC–180 carrier design that it could have easily reverted to using after it knew of Novo's invention. Micro Molds counters that there is no evidence of its copying Novo's carrier and that, except for its product employing the same working gear principle as Novo's invention, there is little similarity between the products. The Court disagrees with Micro Molds' contention that there is little similarity between the products. There is also evidence that Micro Molds knew of the '578 patent when it modified its then existing old MC–180 model blind by placing the support finger on, and making it a part of, the rotating gear. However, Micro Molds' president testified that the reason for the modification was to lower production costs by incorporating the support finger and drive gear into a single piece of plaster. Even accepting this explanation as plausible, the totality of the evidence on this factor mitigates in favor of enhanced damages.

*(2) Whether Micro Molds investigated the scope of the patent and whether Micro Molds had a good faith belief that the Patent was invalid or not infringed.*

One of the principle ways to establish a good faith basis for a belief that one's product does not infringe or that the subject patent is invalid is to obtain and fairly rely on an independent written opinion of a patent attorney. Micro Molds, even after Novo sued it for infringement, failed to obtain such an opinion. This failure mitigates strongly in favor of enhanced dam-

ages. However, Micro Molds provided evidence that its president, after Novo claimed infringement by Micro Molds, had done his own investigation into the validity of the '578 patent. This investigation disclosed that Victor Dickstein's (inventor of the prior art in question here) patent attorney had opined that '578 was invalid and that Dickstein was seeking a reexamination in order to have '578 patent declared invalid. Dickstein's reexamination challenge was not successful. The evidence also establishes that Micro Molds had manufactured the new infringing MC–180 model from 1996 through 1998 without complaint from the original inventor and then owner of '578 patent, Oscar Helver. This evidence could fairly form a reasonable basis for Micro Molds to have a good faith belief that its product did not infringe or that the '578 patent may be invalid. On balance, the evidence on this factor tilts slightly in favor of Novo's claim for enhanced damages.

*(3) Novo's behavior in this litigation.*

The Court has observed nothing in Novo's conduct through these proceedings to warrant enhanced damages. To the contrary, the attorneys on both sides have very professionally and ably represented their respective clients. While the Court disagreed with Micro Molds' interpretation of claim 13 and the jury rejected Micro Molds' affirmative defenses, including invalidity, the Court finds that Micro Molds' defense in this case was neither frivolous nor unreasonable. This factor does not support enhanced damages.

*(4) Micro Molds' size and financial condition.*

Neither party has submitted specific, detailed evidence regarding Micro Molds' size or financial condition. Micro Molds is presently in bankruptcy, but the Court has

received no evidence of the extent of its assets and liabilities. There is evidence which shows that Novo and its parent corporation are fifty times larger than Micro Molds, but that comparison sheds little light on whether Micro Molds has the financial capability to justify enhanced damages. However, the extent of Micro Molds' gross sales of less than $500,000 suggests that a substantial judgment would have a substantial, adverse effect on Micro Molds' financial condition, particularly in view of its bankruptcy. This factor does not support enhanced damages.

### (5) The closeness of the case.

The Court finds that this case was not particularly close with regard to the infringement aspects and lack of Micro Molds' enablement and inequitable conduct defenses, but was moderately close as to Micro Molds' invalidity defense. Moreover, the Court notes that it denied the parties' respective motions for summary judgment, indicating material issues of fact for the jury to resolve. This factor slightly supports enhanced damages.

### (6) Duration of Micro Molds' infringement.

The evidence establishes that Micro Molds infringed the '578 patent since at least December, 1998, when Novo acquired the patent and that Micro Molds knew of the patent's existence, and Novo's ownership, since at least April, 1999. This factor tilts slightly in favor of enhanced damages for the reasons expressed in the above discussion of factor number (1).

### (7) Remedial action by Micro Molds.

Micro Molds took no remedial action after it was on notice of Novo's claim of infringement, even though it had the capability to easily revert to its earlier, noninfringing version of MC–180. Even in view of Micro Molds' explanation for its belief that it was not infringing on Novo's patent, Micro Molds continued use of the new MC–180 design without a thorough investigation into whether it was infringing suggests conduct supporting enhanced damages.

### (8) Micro Molds' motivation for harm.

The Court finds no evidence of Micro Molds' motivation to harm Novo, outside of a normal desire to sell its product in competition with Novo. Given the disparity in the size of Micro Molds and Novo, it is unlikely that Micro Molds was motivated to cause harm to Novo. This factor does not weigh in favor of enhanced damages.

### (9) Micro Molds' attempt to conceal its infringement.

There is no evidence that Micro Molds attempted to conceal its infringement.

The Court finds, that on balance, and taking into consideration the jury's finding of willfulness, these factors weigh in somewhat favor of enhancing damages. However, given the totality of the circumstances, as addressed above, the Court concludes that doubling, rather than trebling Novo's damages is appropriate. The evidence of willful infringement, while sufficient to justify some enhancement, is not so clear-cut and overwhelming as to justify the maximum enhancement. Therefore, the Court will double Novo's royalty damages of $41,622.50 for a total of $82,245.00.

### 2. Attorney's Fees

 Novo also seeks attorney's fees. 35 U.S.C. § 285 provides that attorney's fees may be awarded in "exceptional cases." Awarding attorney's fees pursuant to § 258 serves two goals: (a) to discourage infringement by penalizing the infringer and (b) to prevent "gross injustice" where an infringer has litigated in bad faith. See Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1552

(Fed.Cir.1989). The prevailing party has the burden of proving that the case is exceptional so as to justify an award of attorney's fees. *Id.* at 1551. A finding of willful infringement by the jury is a sufficient reason for concluding that a case is "exceptional" under § 285. Nevertheless, such a finding of willfulness does not require an award of attorney's fees. *See Electro Scientific Indus.,* 247 F.3d at 1353. Even upon its finding that the case is exceptional, a district court has the discretion to refuse to award attorney's fees under § 285. *Id.* However, if the trial court refuses to award attorney's fees where the jury has found willful infringement, that court must give its reasons for determining why the case is not exceptional. *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 543 (Fed.Cir.1990).

Based on the same reasoning discussed above for awarding the partial enhancement by doubling, rather than tripling, Novo's damages, suggests that, while it is a close question, this case is not an exceptional one justifying an award of fees under § 285. An award of attorney's fees would not promote the goals of § 285 in this case. Given the nature and extent of Micro Molds' infringement, the doubling of damages is an adequate penalty. And, as discussed above, Micro Molds did not litigate in bad faith such that Novo suffered a gross injustice by having to prosecute its claims. Accordingly, Novo's Motion for Attorney's Fees [DE # 186–2] will be DENIED.

### D. *Novo's Motion for Permanent Injunction*

The parties have agreed that, based on the jury's verdict, Novo is entitled to a permanent injunction whereby Micro Molds is enjoined from manufacturing, using or selling its MC–180 (new version) carrier or any other carrier that infringes on the invention claimed in Claim 13 of '578.

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

1. Novo's Motion to Re–Open Case to Enter Judgment [DE # 197] is GRANTED.

2. Novo's Motion for Permanent Injunction [DE # 190] is GRANTED.

3. Micro Molds' Motion for Judgment as a Matter of Law/New Trial [DE # 210] is DENIED;

4. The jury's lost profit award is VACATED. Instead, Novo is awarded actual royalty damages in the amount of $41,622.00 plus prejudgment interest.

5. Novo's Motion for Enhanced Damages [DE # 186–1] is GRANTED. Novo's actual damages of $41,622.50 are doubled to $82,245.00.

6. Novo's Motion for Attorney's Fees [DE # 186–2] is DENIED.

7. This case is re-closed. All pending motions not otherwise resolved by this Order are DENIED AS MOOT.