# United States Court of Appeals for the Federal Circuit

04-1296, -1297

GROUP ONE LTD.,

Plaintiff-Appellant,

v.

HALLMARK CARDS, INC.,

Defendant-Cross Appellant.

Robert Neuner, Baker Botts L.L.P., of New York, New York, argued for plaintiff-appellant. With him on the brief were Neil P. Sirota and Karen Wuertz. Of counsel on the brief was Patrick Lysaught, Baker Sterchi Cowden & Rice, LLC, of Kansas City, Missouri.

Michael E. Florey, Fish & Richardson P.C., P.A., of Minneapolis, Minnesota, argued for defendant-cross appellant. With him on the brief were John A. Dragseth and Deanna J. Reichel. Of counsel was Courtney M. Nelson Wills. Of counsel on the brief were Norman C. Kleinberg, Jeff H. Galloway, and Peter A. Sullivan, Hughes Hubbard & Reed LLP, of New York, New York.

Appealed from: United States District Court for the Western District of Missouri

Chief Judge Dean Whipple

# United States Court of Appeals for the Federal Circuit

04-1296, -1297

GROUP ONE LTD.,

Plaintiff-Appellant,

v.

HALLMARK CARDS, INC.,

Defendant-Cross Appellant.

_____

DECIDED: May 16, 2005

_____

Before LOURIE, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

Group One Ltd. ("Group One") appeals from the judgment of the District Court for the Western District of Missouri finding, inter alia, its U.S. Patent Nos. 5,518,492 (the "'492 patent") and 5,711,752 (the "'752 patent") invalid. Group One, Ltd. v. Hallmark Cards, Inc., No. 97-CV-1224 (W.D. Mo. Feb. 20, 2004). Hallmark Cards, Inc. ("Hallmark") cross appeals on various issues. We reverse the district court's grant of judgment as a matter of law ("JMOL") for obviousness, and reinstate the jury verdict that the patents were not invalid for obviousness. However, we affirm the district court's decision that it could not correct the '492 patent and that the claims of the '492 patent were invalid. We also affirm the district court's decisions that (1) the '752 patent was retroactively reinstated by the payment of overdue maintenance fees; (2) summary

judgment of noninfringement regarding Modified Machine No. 7 was appropriate; and (3) an injunction should issue enjoining the use of an air blower. We further hold that the terminal disclaimer of the '752 patent was effective. We affirm-in-part and reverse-in-part the judgment as to prejudgment interest. We remand for the district court to consider Hallmark's motion for JMOL on infringement and the award of enhanced damages, attorney fees, and costs.

BACKGROUND

I

This is the third time this case has come before this court. In Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041 (Fed. Cir. 2001), we reversed the district court's judgment that the '492 and '752 patents were invalid due to an on-sale bar, and affirmed its judgment rejecting Group One's trade secret claim. In In re Group One Ltd., 76 Fed. Appx. 287 (Fed. Cir. 2003), we denied Group One's motions for expedited appeal and stay, and petition for writ of mandamus regarding various interlocutory orders of the district court.

II

Group One is the assignee of the '492 and '752 patents, which claim a device and method of curling ribbon, respectively. **[J.A. at 156, 172, 180]**. Frederic Goldstein ("Goldstein"), Group One's managing director and sole beneficial shareholder, is the named inventor on both patents. Hallmark manufactures pre-curled ribbon products using a number of ribbon curling machines.

The '492 patent issued on May 21, 1996. Claim 1 of the patent is representative of the claims at issue and reads:

A ribbon curling device comprising:
delivery means (12) for delivering a supply of unstressed curlable ribbon;
curling means (17) located downstream of said delivery means (12) for curling the ribbon;
mechanical drive wheel means (31, 32, 33) located downstream of said curling means (17) for drawing the ribbon across said curling means (17); and
stripping means (36) for separating the ribbon from said mechanical drive wheel means.[1]

'492 patent, col. 6, ll. 45-55.

The '752 patent issued on January 27, 1998, and its sole claim reads as follows:

A method for curling ribbon utilizing a device having a delivery means for delivering a ribbon supply, a curling means located downstream of said delivery means for curling the ribbon, a mechanical drawing means for mechanically drawing a ribbon across the curling means and a stripping means for separating the ribbon from said mechanical drawing means comprising the steps of:
delivering a supply of unstressed curlable ribbon from said delivery means;
mechanically drawing said ribbon, by utilizing said mechanical drawing means, across said curling means, said curling means being located downstream of said delivery means, and said mechanical drawing means being located downstream of said curling means;
curling said ribbon with said curling means; and
separating the curled ribbon utilizing said stripping means from said mechanical drawing means in order to prevent the curled ribbon from adversely affecting operation of said mechanical drawing means by preventing the ribbon from adhering to the mechanical drawing means.

---

[1] As discussed below, due to amendments made during prosecution, the final element of claim 1 should have read:

stripping means (36) for separating the ribbon from said mechanical drive wheel means in order to prevent said ribbon from adversely affecting operation of said mechanical drive wheel means by adhering to said mechanical drive wheel means.

A printing error resulted in the omission of this language. Group One, Ltd. v. Hallmark Cards, Inc., No. 97-CV-1224, slip op. at 3 (W.D. Mo. Oct. 23, 2003).

'752 patent, cols. 7-8.  Thus both patents disclose four elements: (1) delivery means, (2) curling means, (3) mechanical drawing means, and (4) stripping means.

III

On September 4, 1997, Group One filed suit against Hallmark alleging, <u>inter alia</u>, infringement of claims 1, 2, 5, 6, 11, 17, and 19 of the '492 patent and claim 1 of the '752 patent.  On June 20, 2003, the district court granted summary judgment of noninfringement in favor of Hallmark regarding Modified Machine No. 7.[2]  Group One obtained a jury verdict in its favor and against Hallmark on September 15, 2003, with respect to the other accused devices.  The jury found that Hallmark had not proven any of the asserted claims obvious by clear and convincing evidence, and that Group One had proven infringement of all of the asserted claims by a preponderance of the evidence.  The jury awarded Group One $8,900,000 in damages and found Hallmark's infringement willful.

Following the jury verdict, the district court considered various motions filed by both parties.  In its order of October 22, 2003, the district court (1) found the claims of the '492 patent invalid for indefiniteness and that it could not correct a printing error that resulted in essential language's being left out of claim 1;[3] (2) limited infringement

---

[2]    Hallmark uses seven machines that allegedly infringe the '492 and '752 patents.  Machine No. 7 was modified in January of 1999 such that its transvector did not literally operate as a stripping means.  A Transvector® is an "air flow amplifier" that uses small quantities of compressed air to move larger quantities of additional air.

[3]    The record is not entirely clear as to the basis for the district court's holding of invalidity, which is variously characterized by the district court and the parties as resting on indefiniteness, lack of enablement, or obviousness.  The examiner found the language necessary to satisfy the definiteness requirement, and we read the district court as having held the claims invalid on this ground.  <u>Group One, Ltd. v. Hallmark Cards, Inc.</u>, No. 97-CV-1224, slip op. at 5 (W.D. Mo. Aug. 5, 2003) (language required by the examiner in order "to particularly point out and distinctly claim" the invention).

damages to the '752 patent, thus reducing the jury's total damages award; (3) found the expiration of the '752 patent during the litigation for failure to pay maintenance fees and its subsequent revival irrelevant to the issue of damages; (4) denied Group One prejudgment interest; and (5) enjoined Hallmark from using a blower or transvector on its machines used to make curled ribbon products. Several months later, the district court granted Hallmark's motion for JMOL on the ground that the claims of both the '492 and '752 patents were obvious, even if the printing error in claim 1 of the '492 patent were corrected by the district court. Judgment was entered in favor of Hallmark.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I

We affirm the district court's judgment regarding the invalidity of the claims of the uncorrected '492 patent on grounds of indefiniteness because necessary language was omitted from the claims. Group One does not challenge this holding except to argue that the district court should have corrected the claims to add the necessary language. Group One's strongest argument relates to claim 1.[4] Due to amendments made during prosecution of the patent, the stripping means element of claim 1 of the '492 patent should have read:

> stripping means (36) for separating the ribbon from said mechanical drive wheel means <u>in order to prevent said ribbon from adversely affecting operation of said mechanical drive wheel means by adhering to said mechanical drive wheel means.</u>

---

[4] The examiner required the addition of the omitted language only to claim 1. With respect to independent claims 16 and 19 (which the examiner allowed without added language), Group One argues only that they should be construed to contain the added language. We reject this argument.

<u>Group One, Ltd. v. Hallmark Cards, Inc.</u>, No. 97-CV-1224, slip op. at 3 (W.D. Mo. Oct. 22, 2003) (emphasis added). A printing error by the PTO resulted in the omission of the emphasized language from the claims. <u>Id.</u> The district court held that it lacked authority to correct the error, and that only the PTO could correct the printing error acting under 35 U.S.C. § 254. <u>Id.</u> Group One argues that the district court was wrong and that Hallmark's argument supporting the district court is "sanctionable." In fact, it is Group One's argument that lacks any foundation.

The alleged error involved here was correctable by the PTO. Section 254 provides for the correction of a PTO mistake with consequences set out in the statute as follows: "Every such [corrected] patent, together with such certificate, shall have the same effect and operation in law on the trial of actions <u>for causes thereafter arising</u> as if the same had been originally issued in such corrected form." 35 U.S.C. § 254 (2000) (emphasis added). While the error was that of the PTO, so far as the record reveals, Group One has failed to seek correction from the PTO.

Even though the PTO has the authority to correct its own errors under § 254, we have held that in some circumstances the district court can correct errors retroactively. But the district court can correct an error only if the error is evident from the face of the patent. <u>Novo Indus., L.P. v. Micro Molds Corp.</u>, 350 F.3d 1348, 1357 (Fed. Cir. 2003). "A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification <u>and</u> (2) the prosecution history does not suggest a different interpretation of the claims." <u>Id.</u> (emphasis added). Because a reader of the patent at issue in <u>Novo Industries</u> could not ascertain the error from the face of the patent, we held that it was beyond the district

04-1296, -1297                                        6

court's authority to guess at what was intended, and that the error, if any, could only be corrected by the PTO. Id. at 1357-58. We recently followed Novo Industries in Hoffer, holding that an error apparent from the face of the patent could have been corrected by the district court. Hoffer v. Microsoft Corp., No. 04-1103, slip op. at 7-8 (Fed. Cir. Apr. 22, 2005).

This rule also comports with our prior case law. In Lemelson, we permitted correction of a patent by inserting the word "toy" in a claim where the patent on its face was clearly directed at a toy trackway rather than an actual trackway. Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1203 & n.3 (Fed. Cir. 1992). In Southwest Software, the patent lacked multiple pages of software code due to a PTO error, and the content of the missing code could not be known by simply looking at the face of the patent lacking the code. Southwest Software, Inc. v. Harlequin Inc., 226 F.3d 1280, 1291, 1296 (Fed. Cir. 2000); see also Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1331 n.1 (Fed. Cir. 2003) (court refused to correct PTO error not apparent from the face of the patent). While we upheld the PTO's issuance of a certificate of correction, we limited the effect of the correction to actions arising after the correction, and assumed that the district court could not correct the error. Southwest Software, 226 F.3d at 1293-97.

The error here is not evident on the face of the patent. The prosecution history discloses that the missing language was required to be added by the examiner as a condition for issuance, but one cannot discern what language is missing simply by reading the patent. The district court does not have authority to correct the patent in such circumstances. The district court found the missing language essential to the

validity of claim 1 of the '492 patent, and Group One has made no claim that the omitted language is not essential to validity. The same defect exists with respect to the other claims. Thus, we affirm the district court's determination that the claims of the '492 patent are invalid.

II

A

Although we uphold the district court's decision that the claims of the '492 patent are invalid, we must decide whether the district court properly held the claim of the '752 patent invalid as obvious and claim 1 of the '492 patent invalid as obvious (assuming correction of claim 1 to supply the omitted language). We reverse the district court's grant of JMOL on obviousness, and reinstate the jury verdict that the patents were not invalid for obviousness. We review the JMOL decision setting aside the verdict without deference. Hewlett-Packard Co. v. Mustek Sys., Inc., 340 F.3d 1314, 1318 (Fed. Cir. 2003). Obviousness is a question of law based on underlying facts. Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220 (Fed. Cir. 2003). The underlying factual disputes were submitted to the jury. The question thus becomes whether the jury verdict of nonobviousness was supported by substantial evidence. See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 381 F.3d 1371, 1375-76 (Fed. Cir. 2004). "In re-creating the facts as they may have been found by the jury, and in applying the Graham factors to the evidence of record in this case, we assess the evidence in the light most favorable to the verdict winner . . . ." McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1351 (Fed. Cir. 2001).

Motivation to combine is a question of fact. Id. Expert testimony of a "lack of motivation to combine and the use of hindsight by [opposing experts] constitutes substantial evidence of nonobviousness." Teleflex, Inc., v. Ficosa N. Am. Corp., 299 F.3d 1313, 1334 (Fed. Cir. 2002). A showing that the motivation to combine stems from the nature of the problem to be solved must be "clear and particular, and it must be supported by actual evidence." Id.

                                        B

The claims of each patent require a "stripping means." The stripping means was construed by the district court as limited to "an air blower that blows, or directs, air toward the curled ribbon." Group One, Ltd. v. Hallmark Cards, Inc., No. 97-CV-1224, slip op. at 28 (W.D. Mo. Sept. 2, 1999). This construction is not contested by Group One on appeal.[5] There is no dispute that prior art patents, and in particular the Cerone and Watts patents, disclosed three of the four elements of claim 1 of both patents, and the first three elements of the remainder of the claims of the '492 patent that are dependent on claim 1. It is also clear that the fourth element, the stripping means, appears in a multitude of prior art references, but that none of these references related to ribbon curling. The issue is whether there was a motivation to combine the Cerone or Watts patent with a stripping means.

Our job was made more difficult by the fact that the appellant's briefs fail to discuss in any meaningful way the record regarding motivation to combine. The record reflects that each side introduced testimony on motivation to combine. Group One's

---

[5]     Group One asserts in the background section of its brief that the district court's claim construction was wrong, but Group One did not pursue the argument because it states that it was not prejudiced by the district court's construction.

expert witness, Dr. Creighton, provided both testimony and an expert report. He stated in his first supplemental expert report that the Cerone and Watts patents do not provide a motivation to combine, and that other patents contained nothing that "suggests, teaches, or provides incentive for, combination with a device having delivery, curling and wheel drive means for which no requirement for a stripping means has been identified." (J.A. at 2688-89.)

For its part, Hallmark introduced the testimony of its expert witness, Dr. Terry Faddis. He testified that "stripping of materials, of web materials through the use of air, [is] something that was known within the general state of knowledge of persons of ordinary skill in the art of web handling" prior to the filing date of the '492 patent. (J.A. at 1476.) He also gave testimony regarding the prior art and stated that many combinations of prior art, together containing all elements of the '492 and '752 patents, would have been obvious to one of ordinary skill in the art prior to the filing date of the '492 patent. (J.A. at 1479-80.) He stated that these combinations would have been obvious because similar solutions are found on prior art printing presses, that one of ordinary skill in the art could and would combine the elements of the patents at issue, and that one of ordinary skill in the art faced with a tangling problem would use a blower or other stripping means to cure the problem. (J.A. at 1477.) In his expert report, Dr. Faddis also stated that one "confronted [with] the problem of webs adhering to drive wheels . . . would have been motivated to seek a conventional solution" found in the prior art references. (J.A. at 2688 (quoting the Expert Report of Dr. Faddis) (emphasis omitted).)

In response, Dr. Creighton critiqued the opinion of Hallmark's expert. Dr. Creighton stated that no motivation to combine could be found in the prior art patents; that Hallmark's expert used improper hindsight in his analysis; and that others (including Hallmark employees) did not think to use a blower even when faced with ribbon wrapping problems. (J.A. at 2410-11.) He specifically noted that "[y]ou wouldn't have looked at the strippers until you knew you needed a stripper. You need to have the idea first, the idea is what has value. That's the important part of an invention is the idea, working it out after you have the idea is much easier." (J.A. at 2411.)

Thus, the jury appeared to be confronted with conflicting testimony on the issue of obviousness, and to have resolved this conflict in Group One's favor. However, at oral argument Hallmark urged that the testimony of Dr. Creighton was inappropriately limited to prior art in the ribbon handling arts instead of the broader, but still applicable, web handling arts. The testimony of Dr. Creighton was not so limited. Hallmark also contended at oral argument that Dr. Creighton failed to address why the nature of the problem to be solved does not provide the requisite motivation to combine. Dr. Creighton clearly addressed Hallmark's argument that prior art patents rendered these patents obvious. Although Dr. Creighton did not address the problem-to-be-solved issue in so many words, he did provide testimony that the problem to be solved had been appreciated in the prior art and noted that this had not led to the air blower solution.[6] This testimony is sufficient to rebut Dr. Faddis' testimony and to sustain the jury verdict of nonobviousness.

---

[6]     Dr. Creighton testified as follows:

Both Hallmark and the district court make much of the fact that the examiner did not consider various stripping means references during prosecution of the patents. While this may affect the ease with which Hallmark may carry its burden of proof, see SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d 1349, 1355-56 (Fed. Cir. 2000), we do not see how this can provide a basis for overturning the jury's factfinding.[7]

---

[N]either of those two patents [Cerone and Watts] have any kind of incentive or a suggestion in teaching that you might do that. Either way is to look at it, there is a couple more.

One of them is, if we, is the fact that it hadn't been done by others, hadn't been thought of by others. We had an example of that in this case. We had Mr. Smith testify that he -- that he made a machine that curled ribbon, but he stripped it by hand. He found out he needed something, but he didn't think to put on a blower.

The first experimental machine that Hallmark made, they also stripped it by hand, and they didn't have a blower on that machine. The machine No. 1, this is the first of these seven that we are talking about here.

When it was built, the most persistent problem in that machine, based on my perusal of the documents produced by Hallmark and they have a sort of history of that, I mean they have meetings regularly to talk about, in which they talked about the machine and the problems.

The most persistent one is the ribbon–wrap problem, ribbon tangling in the machine. Incidentally, it never is saying that the ribbon pushed up into a notch in the belt. I have heard this here for the first time, it's not in any document that they have.

But that problem is their most persistent problem of how to deal with that, and they proposed using a blast of air and different things like that. But apparently these people are all people who are of ordinary skill in the art presumably, and they didn't think to use a blower, so I don't think if you measure it that way, that it is particularly obvious.

(J.A. at 2410.)

[7] Group One's argument that the district court erred in permitting Dr. Faddis to testify regarding the obviousness of claims 2, 5, 6, 11, 17, and 19 of the '492 patent is moot.

04-1296, -1297               12

III

We affirm the district court's determination that the '752 patent was retroactively reinstated and not invalid for failure to pay maintenance fees. From January 27, 2002, to September 29, 2003, Group One failed to pay the required maintenance fees. The patent therefore expired on January 27, 2002. Section 41(c)(1) of Title 35 of the United States Code governs the acceptance of late maintenance fees. It states in part, "If the Director accepts payment of a maintenance fee after the six-month grace period, the patent shall be considered as not having expired at the end of the grace period." Id. Accordingly, we have previously held that "a patent is retroactively rendered enforceable during the lapse time period when the Commissioner accepts a late payment." Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1554 (Fed. Cir. 1997).

On September 25, 2003, Group One petitioned the PTO to accept delayed payment of the maintenance fees, and on September 29, 2003, the PTO granted the petition. The jury issued its verdict on September 15, 2003, and final judgment was issued on October 22, 2003. Thus, submission of the petition to pay late maintenance fees and its acceptance occurred after the jury verdict but before final judgment was entered.

Hallmark argues that the district court could not take judicial notice of the '752 patent's reinstatement because it occurred after the close of evidence. This argument fails because Federal Rule of Evidence 201(f) clearly states that "[j]udicial notice may be taken at any stage of the proceeding." Despite the breadth of the rule, there are circumstances under which it is improper for the district court to take judicial notice after the verdict, such as where unfairness results. See Colonial Leasing Co. of New

England, Inc. v. Logistics Control Group Int'l, 762 F.2d 454, 461 (5th Cir. 1985). Hallmark does not allege, however, that it was prejudiced in any way by the district court's having taken judicial notice of the '752 patent's reinstatement. Therefore, judicial notice of the reinstatement after trial was not improper.

IV

We reject Hallmark's argument on appeal that the '752 patent's terminal disclaimer was ineffective and that the '752 patent was therefore invalid for failure to file the required disclaimer. Section 1.321 of Title 37 of the Code of Federal Regulations, which governs the filing of disclaimers, states that a terminal disclaimer must be signed by the applicant unless there is "an assignee of record." The regulation could not be clearer that only an assignee "of record" must sign a terminal disclaimer; otherwise the applicant (or attorney or agent of record) must sign.

Here, Goldstein, the inventor and applicant, signed the terminal disclaimer. There was no assignee of record. Although the patent application that would become the '752 patent had been previously assigned to PDO Design, S.A. and then to Group One, neither PDO Design, S.A. nor Group One recorded its respective assignment. Thus, Goldstein remained the owner of record, and the terminal disclaimer was effective because it was signed by him. We hold that the '752 patent is not invalid for failure to file a proper terminal disclaimer.

V

Group One urges that the district court erred when it granted summary judgment of noninfringement with regard to Modified Machine No. 7. Group One does not appear to be arguing that a genuine issue of material fact existed at the time summary

judgment was granted. Group One instead argues that the district court should have (1) allowed Group One to depose Bartels, whose affidavits accompanied Hallmark's renewed motion for summary judgment; (2) permitted Group One's experts to re-examine Modified Machine No. 7; and (3) granted Group One's reconsideration motion and considered newly offered declarations of counsel. The district court addressed the first two arguments in its order of April 29, 2003:

> Noting that discovery closed in this case four years ago, and that Group One has already deposed Mr. Bartels on two occasions and that Group One's experts have previously inspected, photographed, and videotaped the machines at issue, the Court sees no reason why Group One is entitled to engage in additional discovery now.

Group One, Ltd. v. Hallmark Cards, Inc., No. 97-CV-1224 (W.D. Mo. Apr. 29, 2003). The district court denied reconsideration in its order dated August 27, 2003. Group One, Ltd. v. Hallmark Cards, Inc., No. 97-CV-1224 (W.D. Mo. Aug. 27, 2003).

We apply regional circuit law to procedural matters not unique to patent law. Solarex Corp. v. Arco Solar, Inc., 870 F.2d 642, 643 (Fed. Cir. 1989). The Eighth Circuit reviews questions of discovery for an abuse of discretion. Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004). We find that the district court did not abuse its discretion in denying new discovery; in refusing to reopen the record on reconsideration to admit declarations of counsel; or in denying reconsideration.

VI

We affirm-in-part and reverse-in-part the district court's decision not to award prejudgment interest on infringement damages with respect to the '752 patent.

The Supreme Court has addressed the issue of prejudgment interest in patent cases. The Court held that 35 U.S.C. § 284 "leaves the court some discretion in

awarding prejudgment interest.  For example, it may be appropriate to limit prejudgment interest, or perhaps even to deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 656-57 (1983).  However, a court's justification for limiting prejudgment interest "must have some relationship to the award of prejudgment interest." Radio Steel & Mfg. Co. v. MTD Prods., Inc., 788 F.2d 1554, 1557-58 (Fed. Cir. 1986) (holding that the patentee's one and one-half year delay in removing patent notice from a product after expiration of the patent would not support a denial of prejudgment interest).  We review a district court's denial of prejudgment interest for abuse of discretion. Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1346 (Fed. Cir. 2001).

Some of the grounds for denying prejudgment interest relied upon by the district court are not supportable.[8]  However, the district court also relied on the fact that Group One delayed in reinstating the '752 patent.  That patent expired on January 27, 2002, for failure to pay maintenance fees, but Group One waited ten days after the September 15, 2003, jury verdict to file a petition to have the patent reinstated.  Because Group

---

[8] We find that the following grounds relied upon by the district court could not support a denial of prejudgment interest: (1) that Goldstein had not built a machine based upon his patent; (2) that Goldstein had not been successful in marketing, selling, or licensing his patent; (3) that the Hallmark machines include features not disclosed in Group One's patents; (4) that neither party conducted market studies to determine a reasonable royalty; (5) that the '492 patent went uncorrected for over seven years; (6) that the '492 patent had been held invalid due to an on-sale bar, a ruling that was reversed by this court; and (7) that Group One unduly delayed filing suit on the '492 patent.  As to the latter three grounds we note that any reasons for not awarding interest for infringement of the '492 patent are irrelevant to the right to receive interest on damages for infringement of the '752 patent, and that the existence of a reversed district court opinion during the years before remand on appeal cannot reasonably be a ground for denying prejudgment interest in any event.

One could not have initiated a suit for patent infringement during the time that the '752 patent was expired, there is a basis for concluding that it should not be allowed prejudgment interest with respect to the '752 patent during the same period. We find that the district court did not abuse its discretion by denying prejudgment interest for the period starting January 27, 2002, but that it erred in denying interest for the period of January 27, 1998 (the date of issuance of the '752 patent) to January 26, 2002, assuming a judgment of infringement is sustained.

VII

The district court did not reach JMOL on the question of infringement. Nonetheless, Hallmark argues that this court could affirm the district court's judgment on the alternative ground that Group One failed to prove infringement. We decline to address the issue of infringement for the first time on appeal. The better practice is to allow the parties to present the issue to the district court in the first instance.

VIII

The district court did not reach the questions of enhanced damages, attorney fees, and costs. The jury verdict of willfulness was not challenged. However, a district court has discretion to award, or not to award, enhanced damages and attorney fees based upon a jury finding of willfulness.

A jury "finding of willful infringement merely <u>authorizes</u>, but does not <u>mandate</u>, an award of increased damages." <u>Modine Mfg. Co. v. Allen Group, Inc.</u>, 917 F.2d 538, 543 (Fed. Cir. 1990) (emphases in original). Furthermore, a court is not required to award attorney fees, even when there is an express finding of willful infringement.

> An express finding of willful infringement is a sufficient basis for classifying a case as "exceptional," and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is <u>not</u> "exceptional" within the meaning of the statute. Nevertheless, the decision whether or not to award fees is still committed to the discretion of the trial judge, and even an exceptional case does not require in all circumstances the award of attorney fees.

<u>Id.</u> (internal citations and quotations omitted) (emphasis in original). A court may award attorney fees and not enhanced damages, or vice versa. <u>Jurgens v. CBK, Ltd.</u>, 80 F.3d 1566, 1573 n.4 (Fed. Cir. 1996). We remand for consideration of the issues of enhanced damages, attorney fees, and costs, assuming that the judgment of infringement is sustained.

IX

Group One complains that the injunction drafted by the district court enjoined only Hallmark's use of "an air blower which blows, moves, or directs air to make curled ribbon products" rather than enjoining the use of an air blower or transvector in connection with a device that otherwise satisfies the claim limitations. While Group One's argument may have merit, we fail to see how Group One was prejudiced by any error in the framing of the injunction which, if anything, is overly broad. Hallmark does not argue that the injunctive order was erroneous. Under these circumstances, we find no reversible error with respect to the injunction, assuming a judgment of infringement.

CONCLUSION

We reverse the district court's grant of JMOL on the issue of obviousness. We affirm the district court on the issues of correction, reinstatement, summary judgment of noninfringement regarding Modified Machine No. 7, and the form of the injunction. We hold that the terminal disclaimer of the '752 patent was effective. We affirm-in-part and

reverse-in-part with respect to prejudgment interest. We remand for the district court to consider JMOL with respect to the judgment of infringement, and (assuming JMOL is denied) the award of enhanced damages, attorney fees, and costs. The district court should decide the remaining issues based upon the existing trial record.

We reject Group One's frivolous argument (based on unwarranted accusations of bias by the district judge) that we should reassign the case to a different district judge on remand.

<u>REVERSED-IN-PART, AFFIRMED-IN-PART, AND REMANDED</u>

COSTS

No costs.