# United States Court of Appeals for the Federal Circuit

---

**H-W TECHNOLOGY, L.C.,**
*Plaintiff-Appellant,*

**v.**

**OVERSTOCK.COM, INC.,**
*Defendant-Appellee.*

---

2014-1054, -1055

---

Appeals from the United States District Court for the Northern District of Texas in No. 12-cv-00636, Senior Judge A. Joe Fish.

---

Decided: July 11, 2014

---

WINSTON O. HUFF, W.O. Huff & Associates, PLLC, of Dallas, Texas, argued for plaintiff-appellant. With him on the brief was DEBORAH JAGAI.

JOHN H. BARR, JR., Bracewell & Giuliani LLP, of Houston, Texas, argued for defendant-appellee. With him on the brief was CHRISTOPHER A. SHIELD.

---

Before PROST,[*] *Chief Judge* and O'MALLEY, *Circuit Judge*.[**]

PROST, *Chief Judge*.

H-W Technology, L.C., ("H-W") appeals from an order of the United States District Court for the Northern District of Texas granting summary judgment in favor of defendant Overstock.com, Inc., ("Overstock"). Specifically, H-W challenges the district court's holding that claims 9 and 17 of H-W's U.S. Patent No. 7,525,955 ("'955 patent") are invalid. We conclude that the district court correctly held claim 17 invalid but erred to the extent it held corrected claim 9 invalid. Because this lawsuit involves only uncorrected claim 9, however, the judgment in favor of Overstock is affirmed as modified.

## BACKGROUND

H-W, the owner of the '955 patent, sued Overstock, alleging that Overstock's smartphone application infringed claims 9 and 17 of the '955 patent. Those claims relate to an apparatus and method for performing "contextual searches on an Internet Protocol (IP) Phone" ("IP Phone"). '955 patent col. 28 ll. 11–28, col. 28 l. 61–col. 29 l. 15. According to the specification of the '955 patent, "[a]n IP Phone is a telephone which can operate and execute voice communication in the same way as conventional telephones either via a Plain Old Telephone System (POTS) or an IP network." *Id.* col. 1 ll. 37–40.

H-W filed this suit in March 2012 and submitted infringement contentions in July of that year. That Octo-

---

[*]    Sharon Prost assumed the position of Chief Judge on May 31, 2014.

[**]    Randall R. Rader, who retired from the position of Circuit Judge on June 30, 2014, did not participate in this decision.

ber, Overstock notified H-W that claim 9, as issued, was missing a limitation.  It was not until late May 2013 that H-W obtained a certificate of correction from the U.S. Patent and Trademark Office ("PTO") and subsequently submitted it to the district court.  In the meantime, the parties had completed their summary judgment and claim construction briefing.  A few months later, the district court construed the claims and granted summary judgment of invalidity, holding that claims 9 and 17 were indefinite.  *H-W Tech., LC v. Overstock.com. Inc.*, 973 F. Supp. 2d 689, 690 (N.D. Tex. 2013); J.A. 3.

H-W timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### ANALYSIS

H-W appeals the district court's (1) construction of "user of said phone" and "said user"; (2) holding that claim 9 is invalid; and (3) holding that claim 17 is invalid.  Issues (1) and (3) are related in that the construction of the disputed terms affects the invalidity analysis of claim 17.  We address each issue in turn.

### I.  Claim Construction

H-W appeals the district court's construction of the claim terms "user of said phone" and "said user" to mean "a consumer operating the IP Phone."  *H-W Tech., LC v. Overstock.com., Inc.*, No. 12-cv-0636, 2013 WL 5314355, at *1 (N.D. Tex. Sept. 23, 2013) ("*Claim Construction Order*").  H-W argues that the correct construction is "a person *or thing* that uses an IP phone."  Appellant's Br. 17.

Claim construction is a question of law that we review without deference.  *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276–77 (Fed. Cir. 2014) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  In construing claims, this court relies primarily on the claim language,

the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–17 (Fed. Cir. 2005) (en banc). After considering this intrinsic evidence, a court may also seek guidance from extrinsic evidence such as expert testimony, dictionaries, and treatises. *Id.* at 1317–18.

H-W argues that a "user of said phone" could be a "thing." The only significant evidence H-W supplies in support of this contention, other than conclusory and undeveloped citations to the specification, is a general purpose dictionary definition of "user" as "a person or thing that uses something." J.A. 754.

In contrast, the district court's construction—that "user of said phone" is limited to a human consumer—finds plenty of support in the claims, specification, and extrinsic evidence. The claims, for example, reference "said user's contact and payment information." '955 patent col. 28 ll. 25–28. Contact and payment information is not something one would expect a "thing" to possess. And the person using the IP Phone is a consumer because the person is purchasing products or services. *E.g.*, *id.* col. 28 ll. 20–24 ("said user completes a transaction with at least one of said merchants").

The specification contains further support for the proposition that a user is a person and not a thing. For example, the user of an IP Phone could enter information "by pressing certain areas in the screen with a finger." *Id.* col. 6 ll. 65–66. Such reference to a finger indicates that the user is a person. Further, at times the specification even equates "user" with "consumer." *Id.* col. 16 l. 17 ("*Consumers are the users* of TADS client side elements 1002." (emphasis added)); *id.* col. 20 ll. 35–38 ("A TA is a relatively small hosted application that enables *the user of the VoIP agent (a consumer)* to complete commercial transactions . . . ." (emphasis added)).

As to extrinsic evidence, the inventors testified that a user is "whoever is operating the phone" and "the person that's ordering the pizza [completing the transaction] . . . ." *Claim Construction Order* at \*9. Overstock also counters H-W's dictionary evidence by pointing to the general purpose Merriam-Webster dictionary which defines "user" as "one who uses." J.A. 751.

In sum, the only significant evidence that supports H-W's position is a single, arguably marginally applicable, dictionary definition. The district court's construction, on the other hand, is supported by the claims themselves, the specification, and the weight of the extrinsic evidence. We thus affirm the district court's construction of "user of said phone" and "said user" to mean "a consumer operating the IP Phone."

## II. Claim 9

H-W also appeals the district court's summary judgment holding that claim 9 is indefinite and thus invalid. Applying the law of the regional circuit, we review the grant of summary judgment de novo. *E.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012). Indefiniteness is a question of law that is also reviewed de novo. *E.g.*, *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001).

Claim 9, *as approved by the PTO*, reads as follows:

9. A method for performing contextual searches on an Internet Phone (IP) phone comprising the steps of:

receiving a command to perform a contextual search;

receiving search criteria from a user of said IP phone;

submitting said search criteria to a server coupled to said IP phone; and

> receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;
>
> *wherein said user completes a transaction with at least one of said merchants listed without the need to generate a voice call;*
>
> wherein said information received by said user comprises a variety of offers, wherein said user selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically; and
>
> wherein said user's contact and payment information is not transmitted to said one of said merchants listed, wherein said user's contact and payment information is available to said one of said merchants listed.

J.A. 1824 (emphasis added). When the PTO *issued* the patent, however, the italicized language was inadvertently omitted. As noted, in its complaint in this case H-W asserted the uncorrected claim.

### A. The District Court Properly Did Not Correct Claim 9

H-W first argues that the district court itself had authority to correct the error in claim 9. A district court can correct a patent only if, among other things, "the error is evident from the face of the patent." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005); *see Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).

Here, the error is not "evident from the face of the patent." Claim 9 reads coherently without the missing limitation. Nothing in the surrounding claim language

indicates that the limitation was missing. Although other claims do contain the missing limitation, the inclusion of that limitation in one claim does not necessitate, or even fairly indicate, that the limitation should be included in all other claims. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").

Failing to find support for its position in the claims, H-W turns to the specification. Citing the italicized portion of the following excerpt, H-W argues that the omitted language "is clearly in the specification." Appellant's Br. 24.

> Premium listing services 1902 include, but are not limited to, top billing (priority placement) of a merchant's contact information in results provided in response to an end-user query (including multimedia content) and *no-contact transactions (allows end-user to complete a transaction with the merchant without the need to generate a voice call).*

'955 patent col. 23 ll. 10–15 (emphasis added).

Regardless of whether this excerpt clearly contains the missing limitation, "no-contact transactions" appear to be *optional* premium listing services. *See id.* col. 22 ll. 14–20 ("The services may be categorized according to baseline directory services 1901, premium listing services 1902, and advertising services 1903. A description of the services that *can be* offered under each category and how these are supported by converged communications content distribution platform owner 1204 (FIG. 12) are described below." (emphasis added)). The optional nature of such services negates any argument that such a limitation in the claim is implied as necessary to the invention. *See*

*Phillips*, 415 F.3d at 1323 (warning against "importing limitations from the specification into the claims").

The parties appear to agree that the PTO's error is clear on the face of the prosecution history. But this court has already deemed evidence of error in the prosecution history alone insufficient to allow the district court to correct the error. *See Grp. One,* 407 F.3d at 1303 ("The error here is not evident on the face of the patent. The prosecution history discloses that the missing language was required to be added by the examiner as a condition for issuance, but one cannot discern what language is missing simply by reading the patent. The district court does not have authority to correct the patent in such circumstances.").

In sum, we hold that the district court did not have authority to correct the error in claim 9 and correctly declined to do so.

### B. The District Court Correctly Did Not Consider the Certificate of Correction

H-W also argues that the district court "failed to factor the certificate of correction in [its] determination that claim 9 of the '955 Patent is indefinite and invalid." Appellant's Br. 21. Certificates of correction are governed by 35 U.S.C. § 254, which states:

> Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents. A printed copy thereof shall be attached to each printed copy of the patent, and such certificate shall be considered as part of the original patent. Every such patent, together with such certificate, shall have the same effect and

operation in law on the trial of actions *for causes thereafter arising* as if the same had been originally issued in such corrected form. The Director may issue a corrected patent without charge in lieu of and with like effect as a certificate of correction.

(Emphasis added.)

Based on the plain language of the statute, this court has specifically held that "[t]he certificate of correction is only effective for causes of action arising after it was issued." *Sw. Software, Inc. v. Harlequin Inc.,* 226 F.3d 1280, 1294–95 (Fed. Cir. 2000). Here, H-W filed this suit before the certificate of correction issued, and neither party has argued that this suit involves causes of action arising after the certificate of correction issued. Indeed, it appears that H-W never even sought to amend the complaint to reflect the correction of claim 9. Thus, the district court was correct not to consider the certificate of correction when determining whether H-W could assert claim 9.

### C. H-W Cannot Assert Claim 9 Uncorrected

Having concluded that the district court properly did not correct the patent claims itself or apply the certificate of correction to this lawsuit, the question remains whether H-W should be permitted to assert claim 9 uncorrected.

At oral argument, H-W appeared to concede that it should not be permitted to do so. Oral Argument at 2:23–48, 5:39–6:34 *available at* http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2014-1054.mp3. We agree. When, as here, a claim issues that omits a material limitation, and such omission is not evident on the face of the patent, the patentee cannot assert that claim until it has been corrected by the PTO. To hold otherwise would potentially permit patentees to assert claims that they never asked for nor rightly attained. Such a result

would be inequitable and undermine the notice function of patents.

We note that this holding is, in some ways, more akin to unenforceability than invalidity—the framework generally used by the parties and the district court here. For example, unlike invalidity, unenforceability of a patent may be cured under certain circumstances. *See, e.g., Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 493 (1942), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ("Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated.").

Regardless, the district court was correct to conclude that H-W cannot assert either the original or corrected versions of claim 9 in this lawsuit. The judgment of the district court in favor of Overstock and against H-W is thus correct. Still, in order to clarify that claim 9, as corrected, has not yet been litigated and, thus, has not been held invalid, we strike the portion of the judgment that holds claim 9 invalid.

### III.  Claim 17

Finally, H-W appeals the district court's holding that claim 17 is indefinite and invalid. Claim 17 is reproduced below:

> 17. A tangible computer readable medium encoded with computer program for performing contextual searches on an Internet Phone (IP) phone comprising the steps of:
>
> receiving a command to perform a contextual search;

receiving search criteria from a user of said IP phone;

submitting said search criteria to a server coupled to said IP phone; and

receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;

*wherein said user completes a transaction with at least one of said merchants listed without the need to generate a voice call*;

wherein said information received by said user comprises a variety of offers, *wherein said user selects one of said variety of offers associated with said one of said merchants listed*, wherein said selected offer is transmitted to said one of said merchants listed electronically; and

wherein said user's contact and payment information is not transmitted to said one of said merchants listed, wherein said user's contact and payment information is available to said one of said merchants listed.

'955 patent col. 28 l. 61–col. 29 l. 15 (emphases added).

The district court held that the italicized limitations were method limitations and that apparatus claim 17 thus combines two statutory classes of invention. The rationale behind invalidating such a claim as indefinite is that it is unclear when infringement occurs.

At oral argument, H-W essentially conceded that if we affirmed the district court's disputed constructions, claim 17 would indeed contain method limitations and thus be indefinite. Oral Argument at 10:45–11:45. Having affirmed the district court's construction, H-W's concession

applies. And H-W is correct to concede that point. As noted by the district court, this case is very similar to two cases, *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005), and *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). In each of those cases this court held claims indefinite for combining two classes of invention.

The claim at issue in *IPXL* is reproduced below:

*The system of claim 2* [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*IPXL*, 430 F.3d at 1384 (citation omitted). The *IPXL* court reasoned as follows:

[I]t is unclear whether infringement of [the claim] occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction. Because [the claim] recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.

*Id.*

Similarly, the court in *In re Katz* stated:

Like the language used in the claim at issue in *IPXL* ("wherein . . . the user uses"), the language used in Katz's claims ("wherein . . . callers digitally enter data" and "wherein . . . callers provide . . . data") is directed to user actions, not system capabilities.

*In re Katz*, 639 F.3d at 1318.

The present case falls squarely within the *IPXL* and *In re Katz* holdings. Here, the disputed language ("wherein said user completes . . ." and "wherein said user selects . . .") is nearly identical to the disputed language in those cases. And, as in those cases, it is unclear here when infringement would occur. Claim 17 is thus indefinite. Accordingly, we affirm the district court's holding that claim 17 is invalid.

## CONCLUSION

We conclude that the district court correctly construed the claims and held claim 17 invalid. The district court also correctly held that H-W cannot assert either the uncorrected or corrected versions of claim 9 in this lawsuit. We thus affirm those holdings. However, for the sake of clarity, we strike the portion of the final judgment holding claim 9 invalid. This is to clarify that claim 9, as corrected, has not yet been the subject of litigation and, therefore, has not been held invalid.

**AFFIRMED AS MODIFIED**