**ROTHSCHILD TRUST HOLDINGS, LLC, Plaintiff,**

v.

**CITRIX SYSTEMS, INC., and Citrix Online, LLC, Defendants.**

No. 06–21359–CIV.

United States District Court, S.D. Florida.

June 5, 2007.

Gabrielle Christina Bozza, Esq., Broad & Cassel, Fort Lauderdale, FL, Mark Francis Raymond, Esq., Thomas Julian Rebull, Esq., Broad & Cassel, Miami, FL, for Plaintiff.

Douglas J. Kline, Esq., Goodwin Procter, Boston, MA, J. Raul Cosio, Esq., Holland & Knight, Miami, FL, for Defendants.

### ORDER ON CLAIMS CONSTRUCTION

JAMES LAWRENCE KING, District Judge.

This matter comes before the Court upon a full evidentiary hearing held on April 13, 2007 (DE # 56) and the May 2, 2007 (DE # 64) before this Court, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

In the *Markman* Hearings, Plaintiff Rothschild Trust Holdings, LLC (herein "Rothschild") and Defendants Citrix Systems, Inc. and Citrix Online, LLC (herein collectively "Citrix") argued their proposed constructions of thirteen (13) disputed terms in U.S. Patent No. 6,101,534 (herein "the 534 Patent") before this Court. The Court heard oral argument, took testimony, and examined various exhibits. After a full development of the record and careful consideration of the parties' papers, oral arguments, evidence, and the patent-in-suit, the Court now construes the disputed terms as follows.

## I. BACKGROUND

The '534 Patent, entitled "Interactive, Remote, Computer Interface System," was issued to Plaintiff on August 8, 2000. The Leigh Rothschild technology, invented in 1996, was accepted and published by the U.S. Patent and Trademark Office without comment in 2000.

The purpose of the interactive, remote, computer interface system claimed in the '534 Patent was to overcome problems associated with transporting large data files over the Internet. The system described in the '534 Patent is structured to achieve "real time, continuous movement, interactivity and image generation" when accessing data-rich video or audio filed over a computer network. '534 Patent, Col. 1:18–20. Thus, the system described in the '534 Patent permits persons at locations away from a computer to access, communicate and interact with data stored on such computer. The '534 Patent lists various examples of what can be done with the claimed invention, such as 3–D space navigation; remote real-estate walkthroughs; remote software upgrades, audio/video playbacks; fast, regular information updates; and enhanced websites.

## II. LEGAL STANDARD

This Court recognizes that the construction of the scope and meaning of disputed terms within patent claims is a question of law to be determined by the court.

*Markman,* 517 U.S. at 372, 116 S.Ct. 1384. The goal of claim construction is to "interpret what the patentee meant by a particular term or claim." *Renishaw PLC v. Marposs Societa per Azioni,* 158 F.3d 1243, 1249 (Fed.Cir.1998). As the Court undertaking the construction of disputed terms this Court may look "to sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1116 (Fed.Cir.2004). The Court's analysis focuses on three sources: the claims, the specifications, and the prosecution history, as precedent dictates. *Markman,* 52 F.3d at 979.

■ In reviewing this matter this Court recognizes that the claim construction analysis begins with an examination of the specific claim language. "The analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Innova/Pure Water,* 381 F.3d at 1116. This Court is mindful that "[c]ourts can neither broaden nor narrow the claims to give the patentee something different" from what is set forth in the patent. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed.Cir.1988). Accordingly, the Court's final construction must align with the words chosen by the patentee to describe the claimed invention.

■ In construing the disputed claim terms, this Court also looked to the intrinsic evidence including the written description, the drawings, and the prosecution history, to provide context and clarification regarding the intended meaning of the claim terms or phrases. *Teleflex, Inc. v. Ficosa N.Am. Corp.,* 299 F.3d 1313, 1324–25 (Fed.Cir.2002). This Court is cognizant that limitations from the specification of the '534 Patent may not be read into the claims, absent the inventor's express intention to the contrary. *Id.* at 1326. An inventor does not have to set forth in the specification every imaginable potential manifestation of the invention. *CCS Fitness, Inc. v. Brunswick·Corp.,* 288 F.3d 1359, 1366 (Fed.Cir.2002). Courts should not limit the invention to the specific examples or preferred embodiment found in the specification. *Markman,* 52 F.3d at 979; *InteliFuse, Inc. v. Biomedical Enterprises, Inc.,* 2007 WL 233387 (S.D.N.Y. 2007) and *Trilithic, Inc. v. Wavetek U.S., Inc.,* 64 F.Supp.2d 816, 820 (S.D.Ind.1999) (patent claims must be read in light of the specification, but courts must avoid reading limitations from the specification into the claim).

This Court engaged in its interpretation mindful that if the analysis of the intrinsic evidence remained ambiguous after its review of the intrinsic record, the Court may look to extrinsic evidence such as expert testimony, dictionaries and learned treatises. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584 (Fed.Cir.1996). When considering extrinsic evidence, however, the Court must take care not to use it to vary or contradict the claim terms of the '534 Patent.

## III. DISCUSSION

### A. INDEPENDENT CLAIM 1

■ Claim 1 is the '534 Patent's only independent claim. Consistent with the '534 Patent's foregoing disclosure of an "interactive, remote computer interface system," Claim 1 describes and requires an "interactive, remote computer interface system" comprising of, among other things:

(1) *Two different computer assemblies in two different locations:*

- a "remote server assembly" and
- a "local processor assembly."

(2) *Associated display information divided between the two computer assemblies:*

- "primary site data" included on the remote server assembly;
- "auxiliary site data" included on the data storage assembly associated with the local processor assembly; and
- the "auxiliary site data being associated with said primary site data".

(3) *The data storage assembly storing the auxiliary site data is a compact. portable and interchangeable readable medium:*

- "at least one data storage assembly associated with said local processor assembly and structured to contain a quantity of auxiliary site data thereon";
- "said data assembly storage assembly including a compact portable and interchangeable computer readable medium;" and
- the "compact, portable and interchangeable readable medium" including "select portions of said quantity of auxiliary site data."

(4) *A coupling between the two computer assemblies that allows each to access and display the data stored on the other:*

- "said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly;"
- "said local processor assembly being structured to access said primary site address [storing primary site data] so as to achieve said data

transmitting and receiving communication with said remote server assembly;" and

- "said remotely accessible auxiliary site addresses [encoded on the compact, portable and interchangeable readable medium and containing auxiliary site data] being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of auxiliary site data by said local processor assembly in conjunction with said primary site data."

To give these claim terms and concepts context, Claim 1 is set forth in its entirety, with the disputed claim terms identified in boldface:

1. An interactive, remote, computer interface system comprising:

**a remote server assembly,** said remote server assembly including a quantity of **primary site data;**

said remote server assembly including at least one primary site address, said primary site address including at least a portion of said primary site data and being distinct so as to identify a location thereof on a computer network;

**a local processor assembly;**

**said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly;**

**said local processor assembly being structured to access said primary site address so as to achieve said data transmitting and receiving communication with said remote server assembly;**

at least one **data storage assembly** associated with said local processor assembly and structured to contain a quantity of **auxiliary site data** thereon, **said**

auxiliary site data being associated with said primary site data;

said data assembly storage assembly including **a compact portable and interchangeable computer readable medium;**

said compact, portable and interchangeable computer readable medium including a plurality of remotely accessible, auxiliary site addresses encoded therein, each of said remotely accessible, auxiliary site addresses including select portions of said quantity of auxiliary site data;

and

**said remotely accessible auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of auxiliary site data by said local processor assembly in conjunction with said primary site data.**

### i. *The Claimed Computer Assemblies*

The parties are in partial agreement as to the correct constructions of "remote server assembly" and "local processor assembly." The parties agree that each assembly is (1) a computer and (2) at a location distinct from the other computer assembly. However, the parties dispute the correct meanings of "remote" and "local."

### a. *"remote server assembly"*

Citrix contends that the proper construction of the term "remote server assembly" is: "[a] computer that is in a network usually shared by multiple users; it is separate from the user and local computer assembly, but is accessible to the user and the local processor assembly via an online connection." Rothschild proposes that the disputed term means: "[a] computer that is in a network usually shared by multiple users; it is separate from a user computer but can communicate with a user computer via an online connection." These two proposed constructions are similar, but have two key distinctions: (1) Rothschild suggests that the "remote server assembly" need be separate only from the user, while Citrix contends that the "remote server assembly" must also be separate from the local processor assembly; and (2) Rothschild's construction requires only that a user be able to communicate with the remote sever assembly via the on-line connection, whereas Citrix claims that the remote server assembly must also be accessible to the user and the local processor assembly.

In addition to the claim language itself, Citrix points to the '534 Patent specification as support for its construction. For example:

The local processor and the remote server assembly are connected in data transmitting and receiving communications with another, such as through a typical on-line connection. Moreover, the local processor assembly is structured to access the primary site address in order to achieve the data transmitting and receiving communication with the remote server assembly, and in particular, so as to be able to access the primary site data contained at the primary site address.

\* \* \*

The local processor assembly 25' is coupled, preferably through a conventional on-line connection, [in] data transmitting and receiving communication with the remote server assembly 50.... As such, the local processor assembly 25' is structured to access the primary site address [of the remote server assembly] and thereby achieve the data transmitting and receiving communication with the

remote server assembly 50 and especially with the primary site address which contains the primary site data sought to be accessed and interfaced by a user of the local processor assembly 25'.

'534 Patent, Col. 5:31–39; '534 Patent, Col. 12:67–Col. 13:15.

According to Citrix, these passages reveal how the '534 Patent specification uses "remote" to identify the computer assembly that is "remote"—i.e., located away—from the user and the local processor assembly and, therefore, must be accessed using an online connection. It also contends that these portions of the specification explain that not only must a user be able to communicate with the remote sever assembly via the on-line connection, but the remote server assembly must also be accessible to the user and the local processor assembly.

Citrix points to extrinsic evidence in the form of dictionary definitions and expert testimony to confirm that its proposed construction of "remote server assembly" is consistent with the term's customary meaning to one of ordinary skill in the art. For example, Citrix points to the dictionary definitions found in technical dictionaries:

> **remote:** adj. Not in the immediate vicinity, as a computer or other device *located in another place* (room, building, or city) and *accessible through some type of cable or communications link.* (*Microsoft Computer Dictionary,* 4th ed.1999)

> **remote system/remote computer system:** n. The computer or network that *a remote user is accessing via a modem.* (*Id.*)

> **remote:** *located on a computer far away from the user.* Contrast "local." (*Dictionary of Computer and Internet Terms,* 9th ed.2006)

> **remote:** controlled, operated, or used *from a distance, as by modem or over cables.* (*Dictionary of Computer Words,* Revised Edition 1995)

Citrix also relies on the testimony of its expert Dr. Newman, who testified at the *Markman* hearing that a "remote server assembly" is a computer that is not local to the user.

Rothschild claims that its proposed construction is correct because the '534 Patent does not describe the term "remote server assembly" in connection with a user. Rothschild, relying on the same portions of the specification cited by Citrix above, contends that Citrix's definition is too limiting because the "remote server assembly" need only be remote from the "local processor assembly," not from a user who may or may not be present at the "local processor assembly." Rothschild also relies on its expert, Dr. Rajkumar, who testified that a "user computer" does not require that a user necessarily be present at the computer.

Rothschild's position that the remote server assembly need not be separate from the local processor assembly contradicts the accepted meanings of "remote" and "local," as well as the '534 Patent's oft-repeated descriptions that the remote server assembly is "remote" from the local processor assembly and must therefore be accessed from the local processor assembly via a connection such as telephone or broadband line. Rothschild's position also is contradicted by Rothschild's proposed construction of "local processor assembly," which is "a computer at *a location distinct from* the remote server assembly," and by its own expert who testified at his deposition that he would insert the phrase "local computer assembly" in Rothschild's construction of "remote server assembly" to make clear that the "remote server assem-

bly" is separate from the "local computer assembly."

Rothschild's position that the local processor assembly need not be able to access the remote server assembly is likewise flawed. Rothschild's contention that the user need only be able to *communicate* with, not *access,* the remote server assembly is contradicted by the accepted technical meanings of "remote" set forth above and the '534 Patent's repeated explanation that the local processor assembly must be able to access the primary site data stored on the remote local processor assembly [1]. And if the local processor assembly could only *communicate* with the remote server assembly (say, send the remote server assembly an e-mail), the display system would not work—indeed, Claim 1 explicitly requires that the local processor assembly "be structured to access" the remote server assembly's primary site address. Moreover, Rothschild's contention that the user can somehow communicate with/access the remote server assembly but the local processor assembly cannot contradicts the definitions set forth above, the descriptions provided in the '534 Patent, and Claim 1's requirement that the local processor assembly be able to access the remote server assembly. Accordingly, the Court construes **"remote server assembly"** as "a computer that is in a network usually shared by multiple users; it is separate from the user and local computer assembly, but is accessible to the user and the local processor assembly via an online connection."

b. *"local processor assembly"*

█ Rothschild urges the Court to construe "local processor assembly" as "a computer at a location distinct from the remote server assembly." Citrix contends that the term should be construed as "[a] computer at the user's location; in contrast to a 'remote' server assembly, the user can access data on the claimed 'local' processor assembly without an on-line connection."

Citrix claims that its proposed construction of "local processor assembly," which associates the "user" with the "local processor assembly" is consistent with the claim language itself, as well as with the '534 Patent specification. For example, Citrix points to forty instances in the specification where the word "user" is associated with the local processor assembly including the following excerpts:

> *[A]* user at the local processor assembly *bly* need not wait for the downloading of substantial quantities of information and images in order to provide a substantially interactive, continuous and effective display on the display assembly associated therewith.

> \* \* \*

> *A user at the local processor assembly 25'* is able to access a particular primary site address or "web site" utilizing normal means so as to interact with the data at the primary site address. When, however, utilization of the primary site address calls for interactive video and/or graphical displays with associated audio, downloading need not take place, but rather the remote server assembly 50 *accesses the [local processor assembly's data storage assembly] and initiates utilization of the auxiliary site data stored thereon by the local processor assembly 25'* so as to significantly enhance the on-line experience with added

---

**1.** In its reply claim construction brief, Rothschild concedes that "the remote server assembly manipulates data on the local processor assembly in order to initiate *access* to data located on the local processor assembly."

information, graphical display, and advertising clips, if desired. Also, *all of this information is utilized without any excessive download times or the need to download specified drivers and the like.* '534 Patent, Col. 6:1–5; '534 Patent, Col. 14:12–26 (emphasis added).

Citrix suggests that the '534 Patent's use of the term "local" to identify the computer that is at (i.e., "local" to) the user's location is consistent with the language of Claim 1 and with the ordinary meaning of the term. With respect to the claim language, Citrix contends that the whole point of the system claimed in Claim 1 is to store auxiliary site data on the local processor assembly so that the user can view it without downloading it over an on-line connection. As for the ordinary meaning of the term "local," Citrix points to definitions provided in various computer dictionaries in support of its construction[2]:

> **local:** adj. 1. In general, *close at hand* or restricted to a particular area. 2. In communications, a device that *can be accessed directly rather than by means of a communications line.* 3. In information processing, an operation performed by *the computer at hand, rather than a remote computer.* (*Microsoft Computer Dictionary*, 4th Ed.2000)
>
> **local:** *located at the user's computer or site.* Contrast "remote." (*Barron's Dictionary of Computer and Internet Terms*, 9th Edition 2006)

In support of its position that "local" in the term "local processor assembly" has no relation to a "user" or a "user's location," Rothschild turns to Claims 1–4 and 6 of the '534 Patent as well as the '534 Patent specification. Yet, Rothschild fails to explain how this intrinsic evidence supports its construction. In fact, Rothschild's proposed construction improperly ignores entirely the claim limitation "local." Rothschild's construction does not require that the "local processor assembly" be at the user's location or be accessible without an on-line connection. Accordingly, Rothschild's construction does not define a *local* processor assembly, but *any* processor assembly, even one that is remote from and not directly accessible by the user. Indeed, under Rothschild's proposed construction, the *local* processor assembly can be any *remote* computer other than the claimed remote server assembly. Rothschild's construction also contradicts the stated purpose of the '534 Patent—storing large files locally so that downloading them is unnecessary. '534 Patent, Col. 14:12–26. Rothschild's proposed construction is thus wrong because it ignores the claim limitation "local" and is inconsistent with the ordinary meaning of "local" and the '534 Patent's use of "local" and "local processor assembly."

Accordingly, consistent with the '534 Patent's use of "local" and its ordinary meaning to one of skill in the art, the Court construes **"local processor assembly"** to mean "a computer at the user's location; in contrast to a 'remote' server assembly, the user can access data on the claimed 'local' processor assembly without an on-line connection."

### ii. *The Claimed Data*

As described in the '534 Patent, the claimed interface system is configured to give the impression that a user is visiting a "web site" that provides a seamless and continuous display of data (for example, real estate display information), including data that would take an unacceptable

---

**2.** Citrix also relies on extrinsic evidence from its expert who testified at the *Markman* hearing that one skilled in the art in the computer science field would understand the term "local processor assembly" to require the "local processor assembly" to be local to the user.

amount of time to download from a remote server assembly. '534 Patent, Col. 3:33–50, 6:1–5, 12:38–46, 14:12–24. To achieve this goal, the system separates the associated web site data into two groups: the "primary site data" of the remote server assembly and the "auxiliary site data" of the local processor assembly. The parties dispute the correct constructions of the claimed "primary site data" and "auxiliary site data," as well as what it means for the auxiliary site data to be "associated with [the] primary site data."

#### a. *"primary site data"*

■ Claim 1 calls for "a remote server assembly, said remote server assembly including a quantity of *primary site data.*" Citrix contends that the term "primary site data" should be construed as "the principal data that a user of the claimed system seeks to access and interface with," while Rothschild proposes that the term means "data at a location on the remote server assembly." "Primary site data" is not a term of art in the computer science field.

Rothschild argues that "primary" modifies "data" and that "primary site data" is primary because it is located on the primary (first) site one accesses when using the technology described in the '534 Patent. Conversely, Citrix argues that "primary" modifies "data" and is the "principal data" one seeks to access. Citrix's construction is inconsistent with basic tenets of grammatical construction. Moreover, Citrix's contention is not supported by the Patent. Because the parties are in agreement that the primary site data is located on the remote server assembly as consistently set forth in the '534 Patent, the Court construes **"primary site data"** to mean: data at a location on the remote server assembly.

#### b. *"auxiliary site data"*

■ Claim 1 requires "at least one storage assembly associated with said local processor assembly and structured to contain a quantity of *auxiliary site data.*" Citrix urges the Court to construe "auxiliary site data" as "data that supplements or aids the claimed primary site data." Rothschild proposes that the term be construed as "data on a location on the local processor assembly." "Auxiliary site data" is not a term of art in the computer science field.

Citrix claims that the '534 Patent defines *auxiliary* site data as a particular type of data and not by its location. For example, Citrix points to the following specification excerpts:

When, however, utilization of the primary site address calls for interactive video and/or graphical displays with associated audio, downloading need not take place, but rather the remote server assembly 50 accesses the [local processor assembly's data storage assembly] and initiates utilization of *the auxiliary site data stored thereon by the local processor assembly 25' so as to significantly enhance the on-line experience with added information, graphical display, and advertising clips, if desired.*

\* \* \*

The system should also be capable of seamlessly and quickly providing a variety *of supplemental and auxiliary information,* which can significantly enhance the on-line experience by achieving sophisticated and generally lengthy audio and video segments....

\* \* \*

Preferably, the compact, portable interchangeable, computer readable medium 36 is structured to contain a plurality of *separate and distinct video images, au-*

*dio signals, graphical displays, etc. and various combinations thereof.* Indeed, it is seen that *the auxiliary site data* contained on the compact, portable interchangeable computer readable medium 36 primarily includes data types which are substantially difficult to quickly and effectively download from a remote server assembly. . . .

'534 Patent, Col. 14:15–24; '534 Patent, Col. 14:1–10; '534 Patent, Col. 3:43–49(emphases added).

Citrix also argues that the patent's use of "auxiliary site data" to describe the display data or information meant to supplement or aid the primary site data is consistent with the ordinary meaning of "auxiliary" as defined in the dictionary:

> **auxiliary:** 1. Giving assistance or support; helping. 2. Acting as a subsidiary; supplementary: [e.g.,] the main library and its auxiliary branches. (*The American Heritage Dictionary of the English Language,* 3d Ed.1996).

In addition, Citrix points to the testimony of its expert Dr. Newman, who testified at the *Markman* hearing that "auxiliary site data" is data that "supplement[s] the primary site data." (4/13/07 Hearing Tr. at 78:11–20).

Rothschild contends that the claims and specification support its proposed construction. For example, Rothschild points to language in the specification that indicates that the auxiliary site data is stored on a data storage assembly associated with the local processor assembly. The Court concludes that Rothschild's proposed construction of "auxiliary site data" suffers from the same defect as its construction of "primary site data." By defining "auxiliary site data" merely by its location, Rothschild effectively reads out "auxiliary site" from the limitation. Accordingly, in accordance with the patent's use of the term

and the ordinary meaning of "auxiliary," the Court construes the limitation **"auxiliary site data"** as "data that supplements or aids the claimed primary site data."

#### c. *"said auxiliary site date being associated with said primary site data"*

 Claim 1 further requires that the claimed "auxiliary site data be associated with said primary site data." Citrix suggests that this term is properly construed as "[t]he auxiliary site data concerns the same subject matter as the claimed primary site data and provides additional information on that subject matter. For example, if the primary site data concerns a particular real estate space, the associated auxiliary site data may include video images of that particular real estate space." Rothschild contends that the term should be construed as "auxiliary site data is capable of interacting with the primary site data."

Because Citrix's position is contradicted by its own expert and because Rothschild's proposed construction is consistent with the language of the '534 Patent, the Court construes **"said auxiliary site data being associated with said primary site data"** to mean: auxiliary site data is capable of interacting with the primary site data.

#### iii. *The Claimed Storage Assemblies*

Claim 1 requires that the auxiliary site data be stored on "at least one data storage assembly" associated with the local processor assembly. In addition, the claim later specifies that the claimed data storage assembly must include a "compact, portable and interchangeable computer readable medium" that stores at least some of the auxiliary site data. The parties dispute the correct construction of these storage assemblies.

a. *"at least one data storage assembly associated with said local processor assembly"*

■ The parties' dispute concerning this limitation focuses on a single word: Citrix proposes that the "data storage assembly" is a *structure* for holding data, while Rothschild contends it is a *place* for holding data. While Rothschild claims that its construction is supported by the specification of the '534 Patent, Rothschild does not explain how the specification supports its construction and the basis for Rothschild's proposed construction is not clear.

Citrix, on the other hand, claims that its proposed construction is supported by the claims, the patent specification, and the ordinary meaning of "assembly," which, as defined in the dictionary, is a structure of some kind, i.e., a collection of parts. For example, in relevant part, the *American Heritage Dictionary* defines "assembly" as follows:

> **assembly:** 4a. The putting together of manufactured parts to make a completed product, such as a machine or electronic circuit. 4b. *A set of parts so assembled.*

Citrix also suggests that the ordinary definition of "assembly" is consistent with the patent's use of the term. Citrix notes that each of the examples of a "data storage assembly" in the '534 Patent contemplates a structure, such as an internal hard drive, CD–ROM or DVD disk. For example:

> Preferably, the data storage assembly 30 includes a computer readable medium, and in the preferred embodiment of FIG. 1 preferably includes a computer hard drive or other fixed data storage assembly wherein a large quantity of data may be stored and contained. As will be described in further detail subsequently, however, the data storage assembly may also include a portable

and/or interchangeable assemblies such as compact discs or other such writable and non-writable assemblies and the accompanying drives.

'534 Patent, Col. 7:55–64.

The Court concludes that Citrix's proposed construction is supported by the relevant intrinsic and extrinsic evidence. Rothschild identifies no basis for construing an assembly to be a "place" rather than a structure, and such a construction would contradict both the '534 Patent and the ordinary meaning of the word. Moreover, it is not clear what Rothschild's proposed construction means: for example, Rothschild's construction could encompass a location, such as a court room, rather than the structure storing the data. Accordingly, the Court construes **"at least one data storage assembly associated with said local processor assembly"** as "the local processor assembly includes at least one structure for holding data."

b. *"a compact, portable and interchangeable computer readable medium"*

■ Claim 1 explains how the data storage assembly associated with the local processor assembly includes "a compact, portable and interchangeable computer readable medium." Rothschild suggest that this term be construed as "a computer readable medium that is small, can be carried easily and can be swapped." Citrix urges the following construction for this claim term: "[a] computer readable medium that is small, can be carried easily, and can be mutually substituted. Examples include a CD–ROM or a DVD." In contrast, the local processor assembly's hard drive is not a "compact, portable and interchangeable computer readable medium."

The parties' dispute over this claim limitation stems from Rothschild's proposal, stated in its reply brief and at the *Markman* hearing, that the "compact, portable and interchangeable computer readable medium" should encompass the local processor assembly's hard drive. Rothschild has argued that internal computer hard drives are interchangeable and swappable. Citrix contends that Rothschild's proposal directly contradicts the '534 Patent, which distinguishes between the claimed "data storage assembly," *i.e.*, the local processor assembly's hard drive, and a "compact, portable, and interchangeable computer readable medium," such as a CD–ROM or DVD. For example, Citrix points to the following passages from the '534 Patent specification:

> While the data storage assembly may include only a fixed/hard drive of the local processor assembly, preferably the data storage assembly of the interface system includes at least one compact, portable and interchangeable readable medium.

> \* \* \*

> Preferably, the data storage assembly 30 includes a computer readable medium, and in the preferred embodiment of FIG. 1 preferably includes a computer hard drive or other fixed data storage assembly wherein a large quantity of data may be stored and contained. As will be described in further detail subsequently, however, the data storage assembly may also include a portable and/or interchangeable assemblies such as compact discs or other such writable and non-writable assemblies and the accompanying drives.

> \* \* \*

> [W]hile the data storage assembly may include a computer hard-drive of the local processor assembly 25', in the preferred embodiment and potentially in addition to the computer hard-drive associated with the local processor assembly 25', the data storage assembly will include a compact, portable and interchangeable computer readable medium 36 and its associated external or internal drive 35, which can be configured to merely read data or to both read and write data.

'534 Patent, Col. 5:41–45; '534 Patent, Col. 7:55–64; '534 Patent, Col. 13:22–33.

Claim terms must be construed from the vantage point of one with ordinary skill in the art *at the time the patent application was filed* and who has read the patent specification. Regardless of whether internal hard drives in 2007 are compact, portable, and interchangeable, Rothschild has presented no evidence to show that this was the case 10 years ago when the patent was filed.[3] Moreover, even if internal hard drives could have generally been understood as compact, portable and interchangeable computer readable media in 1997, the fact that the patent specifically distinguishes the disputed claim term from internal hard drives means that Rothschild's construction cannot be correct. Accordingly, the Court construes **"a compact, portable and interchangeable computer readable medium"** to mean: [a] computer readable medium that is small, can be carried easily, and can be mutually substituted. Examples include a CD–ROM or a DVD. In contrast, the local processor assembly's hard drive is not a "compact, portable and interchangeable computer readable medium."

3. Indeed, Rothschild's expert testified at the *Markman* hearing that in the past, hard drives *were not* compact, portable or interchangeable. (4/13/07 Hearing Tr. at 161:15–162:7).

iv. *The Claimed Access And Use of Data*

The parties' remaining disputes on the correct construction of Claim 1 terms relate to the limitations concerning how the claimed assemblies access and utilize the primary site data and auxiliary site data.

a. *"said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly"*

 The parties' dispute regarding this limitation focuses on the word "and." Citrix claims that because the local processor assembly must be able to transmit data to, *and* receive data from, the remote server assembly, the term "said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly" should be construed to mean: "[t]he local processor assembly and the remote server assembly are connected to one another in a manner that allows each assembly to transmit data to, and receive data from, the other assembly." Rothschild proposes that the claim term should be construed as "the local processor assembly and the remote server assembly are connected to one another in a manner that permits the transmission and receipt of data."

It is both clear from the language of the claims and supported by the specification of the '534 Patent that the two assemblies are communicating and interacting with one another. There is no suggestion or requirement which would limit the transmission in the manner suggested by Citrix. The Court notes that if the patentee sought to limit the manner in which data is transmitted, he would have specifically done so within the claims of the '534 Patent.

The Court therefore construes **"said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly"** to mean: the local processor assembly and the remote server assembly are connected to one another in a manner that permits the transmission and receipt of data.

b. *"said local processor assembly being structured to access said primary site address so as to achieve said data transmitting and receiving communication with said remote server assembly"*

 The parties' dispute regarding this limitation focuses on the word "access." Under the language of the claim, the local processor assembly must "access" the claimed primary site address (which contains primary site data stored on the remote server assembly) so as to achieve the claimed coupling between the local processor assembly and the remote server assembly. Rothschild proposes that to access something is to "communicate" with it. Citrix contends that the ordinary meaning of "access" to one of ordinary skill in the art is "to locate, gain entry to, and use."

Despite this disagreement it is noted that the experts for both parties agree that a person skilled in the art would interpret access to mean to either read *or* write. *See Docket No. 49 at 10.* Therefore, the definition of "access" proposed by Citrix is unreasonably limiting and, if adopted, would ascribe a meaning inconsistent with the term's ordinary meaning. Citrix also suggests that the phrase should be interpreted to mean that the local processor assembly *creates the coupling* between it and the remote server assembly. The '534 Patent does not state that the local processor assembly creates the coupling between it and the remote server assembly. In fact, the parties agree that

it is the remote server assembly which initiates the utilization of data on the local processor assembly. The Court finds Citrix's definition to be inconsistent with the parties' agreement as well as the language of the '534 Patent.

Based on the foregoing analysis, the Court construes **"said local processor assembly being structured to access said primary site address so as to achieve said data transmitting and receiving communication with said remote server assembly"** to mean: the local processor assembly can communicate with the primary site address of the remote server assembly in a manner that permits the transmission and receipt of data.

c. *"said remotely accessible auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of auxiliary site data by said local processor assembly in conjunction with said primary site data"*

 Like the previous disputed term, the parties' dispute regarding this limitation also focuses on the term "access." Citrix proposes that the disputed term be construed as "the remote server assembly can locate, gain entry to, and use the remotely accessible site addresses to cause the select portions of auxiliary site data to be displayed by the local processor assembly in combination with the primary site data." Rothschild contends that the term is properly construed as "the auxiliary site address is capable of being remotely interacted with by the remote server assembly so as to cause the use of select portions of said quantity of auxiliary site data by said local processor assembly at the direction of, intermingled with, or otherwise with some of the primary site data."

There is no dispute between the parties that it is the remote server assembly which manipulates data on the local processor assembly in order to initiate access to data located on the local processor assembly. In addition, Citrix's proposed interpretation of "utilization" is inconsistent with the language of the '534 Patent and with the common, ordinary meaning of the term.

Therefore, the Court construes **"said remotely accessible auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of auxiliary site data by said local processor assembly in conjunction with said primary site data"** to mean: the auxiliary site address is capable of being remotely interacted with by the remote server assembly so as to cause the use of select portions of said quantity of auxiliary site data by said local processor assembly at the direction of, intermingled with, or otherwise with some of the primary site data.

**B. THE DISPUTED DEPENDENT CLAIMS**

There are two types of patent claims: independent claims and dependent claims. Independent claims—such as Claim 1 addressed above—stand alone and set forth all of the limitations of the claim. Dependent claims, on the other hand, refer to ("depend from") another claim and must be read in connection with the claim (or claims) from which they depend: a dependent claim includes all of the limitations of the claims from which it depends plus the additional limitation or limitations recited in the dependent claim. *See* 35 U.S.C. § 112, ¶ 4. Here, in addition to independent Claim 1 addressed above, dependent Claims 4, 6, and 13 also are in dispute.

### i. *Dependent Claim 4*

Section 112 of the patent laws requires, among other things, that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. If one of ordinary skill in the art at the time of the patent application would not understand the limitations of a claim, the claim fails to meet this requirement and is "indefinite." *E.g., Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1371 (Fed.Cir.2005). Whether a claim is indefinite is a question of law for the Court. *Id.*

Claim 4 depends from Claim 1 and reads as follows:

> 4. A system as recited in Claim 1 wherein **said remote server assembly is structured internal site and identify an internal site address** of said compact, portable and interchangeable computer readable medium relative to said local processor assembly.

Citrix contends, and Rothschild concedes, that the italicized portion of this claim is indecipherable and would have no meaning to one of skill in the art. Further, it is undisputed that the highlighted language in the foregoing quote is a typographical error which was made by the United States Patent and Trademark Office.

Rothschild introduced into evidence a certified copy of the application filed with the USPTO. The application reflects that Claim 4 provides: "A system as recited in claim 1 wherein said remote server assembly is structured **to search for** and identify an internal site address of said compact, portable and interchangeable computer readable medium relative to said local processor assembly."

Citrix argues that Rothschild should have filed a certificate of correction with the USPTO. Further, that in the absence of such a certificate, the claim is invalid for indefiniteness, and that the Court is without power to rewrite the claim in accordance with the obvious administrative error made by the USPTO. The Court rejects Citrix's argument.

> The district court stated that it was powerless to correct the error. We do not agree that such correction exceeds the judicial power. Absent evidence of culpability or intent to deceive by delaying formal correction, a patent should not be invalidated based on an obvious administrative error. The defendants did not state that they were prejudiced, or even confused, by the error. The district court held that it has no authority to correct or ignore even a typographical error in a patent. That is inaccurate. When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1356–57 (Fed.Cir.2003). Here the error was apparent from the face of the patent, and that view is not contradicted by the prosecution history. We conclude that claim 22 was improperly invalidated.

*Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed.Cir.2005).

Here, as in *Hoffer*, "the error was apparent from the face of the patent, and that view is not contradicted by the prosecution history." Most importantly, the specification of the '534 patent makes clear both the error and what was intended.

> In accordance with the previously recited security measures, the interface system 11 preferably includes a specific applet or "cookie" structured to direct the remote server assembly 50 to specifically **look for and identify** the internal site address of the compact, portable,

interchange computer readable medium 36 relative to the local processor assembly 25', so that the auxiliary site addresses thereon can be searched.

The applet or cookie of the present invention directs the remote server assembly 50 to only **look for and identify** the internal site address of the interchangeable computer readable medium....

'534 Patent at 15:3–10, 15:14–17.

The Court, taking all factors into account (including the case law cited by Citrix) finds that even with the typographical error, the construction proposed by Rothschild is consistent with the language of the '534 Patent. Thus, **Claim 4** is construed to mean: the remote server assembly can identify where on the local processor assembly the compact, portable and interchangeable computer readable medium is found.

### ii. *Dependent Claim 6*

■■ Claim 6 depends from Claim 1 and reads as follows:

6. A system as recited in Claim 1 wherein said compact, portable and interchangeable readable medium is **structured to identify an internal site address thereof relative to said local processor assembly, thereby facilitating access thereto by said remote server assembly.**

Rothschild contends that the boldface language in Claim 6 should be construed to mean: "[t]he remote server assembly can identify where on the local processor assembly the compact, portable and interchangeable computer readable medium is found so that it can interact with it." Rothschild points to the language of the claim which, it argues, supports the notion that the computer readable medium identifies its internal site address so that the remote server assembly can access the data contained on such medium.

Citrix argues that by its plain language, Claim 6 requires that *the compact, portable and interchangeable readable medium* be able to identify its location in the local processor assembly (i.e., its "internal site address") to the remote server assembly. Accordingly, Citrix urges the Court to construe Claim 6 to require that the compact, portable and interchangeable readable medium be "put together so as to identify to the remote server assembly the compact, portable and interchangeable computer readable medium's site address within the local processor assembly."

However, as established above, there is no dispute that the remote server assembly initiates the utilization of the auxiliary site data located on the local processor assembly. Therefore, it follows that the remote server assembly also identifies where on the local processor assembly the compact, portable and interchangeable computer readable medium is located, as suggested by Rothschild.

Thus **Claim 6** is construed to mean: the remote server assembly can identify where on the local processor assembly the compact, portable and interchangeable computer readable medium is found so that it can interact with it.

### iii. *Dependent Claim 13 Is Indefinite*

■■ Claim 13 reads as follows:

13. A system as recited in Claim 12 wherein said remotely transmitted signal includes a *full band* broadcast signal.

Citrix argues that the italicized words in Claim 13 cannot be understood by one of skill in the art and that the claim is therefore indefinite. Citrix argues that the italicized term was coined by Rothschild for use in the patent because it is not a term typically used in the computer field to describe a type of broadcast signal. To

support its argument Citrix claims that the term "full band" is not defined in technical dictionary such as the *Dictionary of Computer Words,* the *Microsoft Computer Dictionary, Barron's Dictionary of Computer and Internet Terms* or even in ordinary usage dictionaries like the *American Heritage of the English Language.*

Rothschild proposes that the term "full band broadcast signal" be construed as "an unconstrained transmission." Rothschild cites to the '534 Patent specification in support of this proposed construction, but does not explain how the specification actually supports its construction. In fact, Rothschild has failed to identify a single dictionary or treatise explaining what a "full band broadcast signal" is. In addition, the '534 Patent does not provide any definition of "full band broadcast signal." Instead, the '534 Patent identifies it along with other types of signals—such as broadband and interlaced—but fails to identify what the signal is or how it differs from the other identified signals. Col. 3:29–33, Col. 12:30–34, Col. 12:65–13:15. Although Rothschild proposes that "full band broadcast signal" be construed to mean "an unconstrained transmission," Rothschild fails to identify any such definition in the '534 Patent, or anywhere else.

The Court finds that because the claim term **"full band broadcast signal"** in Claim 13 has no meaning to one of skill in the art and is not defined in the '534 Patent, Claim 13 cannot be construed and is therefore indefinite. *E.g., Honeywell,* 341 F.3d at 1338, 1341.

### IV. *CONCLUSION*

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the disputed terms have been given the foregoing construction.